Oliver et al., Demandantes y Apelantes, *v.* Oliver, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Ponce en en causa sobre nulidad de ejecución y reivindicación.

No. 1068.—Resuelto en julio 30, 1915.

Cuestiones Envueltas en el Litigio—Resolución en Primera Instancia por el Juez de Distrito.—Es una buena práctica, en circunstancias normales, dar al juez de distrito la oportunidad de resolver en primera instancia todas las cuestiones envueltas en el litigio.

Nulidad—Prescripción de Cuatro Años—Contratos en que Rige.—El término de prescripción de cuatro años que se fija para las acciones de nulidad es aplicable únicamente a los contratos en que concurren los requisitos que expresa el artículo 1228 del Código Civil.

Venta Judicial—Contrato—Consentimiento—Jurisdicción Sobre la Materia y Sobre la Persona.—Considerando la venta judicial como un contrato en el que la corte o su funcionario debidamente autorizado sustituye al verdadero vendedor cuyo consentimiento lo da mediante una ficción legal paradógica, la corte, sin embargo, tiene que tener jurisdicción por lo menos sobre la materia en controversia y ordinariamente sobre la persona del demandado.

Id. — Emplazamiento al Demandado — Jurisdicción — Falta de Consentimiento.—Cuando la ley exige que se notifique personalmente el emplazamiento al demandado, o en otra forma que sea equivalente, como requisito previo indispensable para el ejercicio de su jurisdicción, si no existe tal notificación previa carece enteramente la corte de facultad para dar su consentimiento a una venta judicial, como sucedería en el caso de cualquier individuo particular que no estuviera autorizado.

Id.—Acción Reivindicatoria de Bienes Inmuebles Vendidos en Venta Judicial—Prescripción—Falta de Consentimiento para la Venta.—La alegación de prescripción no constituye defensa alguna en una acción reivindicatoria de bienes inmuebles vendidos en una venta judicial, cuando la corte carece enteramente de facultad para dar su consentimiento para la venta.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José Tous Soto y Herminio Díaz Navarro.*

Abogados de la parte apelada: *Sres. Tord, Castro y Canales.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El día 23 de octubre de 1913, la Corte de Distrito de Ponce

en un pleito que en la demanda se designó con el nombre de acción reivindicatoria, dictó la siguiente sentencia:

"La corte, vistos los alegatos orales y escritos de las partes y de acuerdo con su decisión dictada en este caso resuelve, que debe declarar y declara con lugar la excepción previa de que la demanda no aduce hechos suficientes para constituir una causa de acción por haber prescrito la acción de nulidad de contratos, siendo indispensable pedir previamente dicha nulidad para que la acción ejercitada en este caso pueda prosperar, y habiendo ésta prescrito por el transcurso del tiempo que para ejercitarla fija la ley, se desestima la demanda con costas."

El único fundamento en que se basa la sentencia aparece claramente expresado en el siguiente memorándum de opinión que fué emitida por la corte sentenciadora:

"Se ejercita por parte de los demandantes la acción reivindicatoria fundada en la ineficacia de los procedimientos y de la subasta celebrada con motivo de un juicio ejecutivo sumarísimo seguido por Francisco Oliver Ballester contra Antonio Oliver Fontanet, causante de los demandantes. Los hechos aparecen claramente de la demanda enmendada presentada y no creemos necesarios repetirlos ahora. El demandado ha presentado contra la demanda enmendada la excepción previa general de falta de causa de acción y además excepción previa de falta de causa de acción fundada en que de la faz de la demanda aparece que la acción de nulidad de contrato ha prescrito. Alegan los demandantes que no ejercitan en esta demanda la acción de nulidad por no ser necesaria y que se limitan a ejercitar la acción reivindicatoria. Esta corte en resolución de octubre 17 de 1913 sosteniendo las excepciones previas a la demanda primitiva se pronunció en sentido de considerar indispensable en el caso presente hacer previamente la petición de la nulidad del título del demandado, como lo hacían los demandantes en su citada demanda original, y como necesariamente tenían que hacerlo para que la acción reivindicatoria pudiera prosperar. Véase la resolución de esta corte de octubre, 1913, en este caso, la cual se hace parte de esta resolución con el fin de no tener que repetir las autoridades citadas en ella. Entendemos que los demandantes en su demanda enmendada en realidad ejercitan la acción de nulidad, pues si bien en la súplica se pide que se declaren 'ineficaces' la venta judicial a favor de José González y la compraventa otorgada por José González a Francisco Oliver Balles-

ter, y no 'nulos,' es lo cierto que para que esos contratos puedan declararse por esta corte 'ineficaces' es necesario que se considere que no tienen fuerza legal alguna por algún vicio o defecto, o sea, que se consideren nulos. Por otra parte los hechos alegados en la demanda demuestran claramente que la acción reivindicatoria que se ejercita se deriva y es una consecuencia de la nulidad de los contratos referidos y es inmaterial que en la súplica no se pida que la corte declare nulos los referidos contratos. La corte entiende que la acción ejercitada en la demanda ha prescrito por las razones expuestas y resuelve que debe sostener y sostiene la excepción previa de que la demanda no aduce hechos suficientes para constituir una causa de acción, no siendo susceptible de nueva enmienda la demanda en cuanto a este extremo, se ordena al secretario registre una sentencia declarando sin lugar la demanda con costas a los demandantes.''

La demanda enmendada, omitiéndose sus párrafos primero y último y la descripción de las fincas, es como sigue:

''*Segundo.*—Que el demandado Francisco Oliver Ballester inició en 11 de julio de 1900, ante la Corte de Distrito de Ponce procedimientos, de acuerdo con la ley hipotecaria vigente, contra Antonio Oliver Fontanet, que en esa fecha había fallecido, en cobro del capital de un crédito hipotecario por nueve mil pesos provinciales constituídos por éste a favor de Don Matías Ferrer y por éste cedido al demandado sobre los inmuebles propiedad de dicho Antonio Oliver Fontanet, dedicados a plantaciones de café, que se describen así: * \ * *. *Tercero.*—Que dicho crédito hipotecario no devengaba intereses ni el cobro de los mismos fué objeto del procedimiento ejecutivo hipotecario antes referido. *Cuarto.*—Que en 16 de julio de 1900 se ordenó el requerimiento del demandado, y habiendo presentado en autos el demandante la certificación de defunción del demandado, creditiva de que éste había fallecido desde primero de septiembre de 1899, solicitó y obtuvo de la corte que se requiriera de pago a Antonio Alcover y Oliver, que alegó el demandante se encontraba al frente de la finca hipotecada, sin consignar en qué concepto legal. *Quinto.*—Que Don Antonio Alcover Oliver, que no se encontraba en la finca, en concepto de apoderado, administrador o arrendatario ni en ningún concepto legal, fué requerido de pago, sin notificársele la providencia ordenando el requerimiento, ni dársele copia de la demanda o escrito inicial; y sin haberse antes ni después intentado el requerimiento de los herederos legales del fallecido Antonio Oliver Fontanet, ni habérseles sustituído como demandados en lugar de su

causante, *ni notificádoseles por edictos del procedimiento sumarísimo en cobro del expresado crédito hipotecario.* *Sexto.*—Que expirado el plazo del requerimiento de pago, se sacaron los bienes hipotecados a pública subasta, anunciándose ésta en los números de la Gaceta de la isla correspondientes a los días 6, 7 y 8 de noviembre de 1900 y no en ningún otro número de dicho periódico oficial, mediando entre la primera publicación y la subasta 18 días. *Séptimo.*—Que la subasta se efectuó el día 24 de noviembre de 1900 concurriendo como único licitador Don José González, a quien se dió la buena pro por la suma de 13,219.28 pesos provinciales, otorgándosele de oficio la correspondiente escritura de venta judicial. *Octavo.*—Que el avalúo de las fincas hipotecadas era según la escritura de hipoteca, con renuncia de todo nuevo avalúo o acción encaminada a este fin de 24,700 pesos provinciales, que a instancias del demandante se verificó un nuevo avalúo, sin darse intervención en el mismo a los herederos del demandado; que éste nuevo avalúo ascendente a 20,320 pesos provinciales, sirvió de base para la subasta celebrada; y que en dicha subasta fueron vendidos los inmuebles hipotecados en globo. *Noveno.*—Que el comprador no consignó en dinero en la corte el precio de 13,219.28 pesos provinciales, sino solamente la cantidad de 1,189.20 dollars, admitiéndose como abono del precio, un documento privado de depósito a su favor firmado por Francisco Oliver por 4,210.80 pesos provinciales la suma de cuatro mil pesos provinciales de una primera hipoteca sobre algunos de los inmuebles subastados y la de doscientos diez y nueve pesos provinciales con 20 centavos de intereses de dicha hipoteca. *Décimo.*—Que posteriormente y por escritura pública de 16 de mayo de 1903 el demandado Francisco Oliver Ballester compró al comprador judicial José González todas las fincas hipotecadas y subastadas por éste, descritas en la alegación segunda, inscribiendo su título de compra en el registro de la propiedad el referido Francisco Oliver Ballester, a cuyo nombre se encuentran inscritas en la actualidad. *Undécimo.*—Que el inicio, continuación y terminación del referido procedimiento ejecutivo hipotecario, se verificaron sin tener la corte jurisdicción, sobre la materia de la acción, y en contravención a las Ordenes Generales número 18 de 12 de febrero de 1899, número 10 de 19 de enero de 1900 y 92 de 28 de abril de 1900 disponiendo la suspensión de la Ley Hipotecaria en cuanto al procedimiento para hacer efectivos créditos contra fincas agrícolas de todo género y las industrias y maquinarias a ellas afectas desde 19 de enero de 1899 hasta 19 de enero de 1901. *Duodécimo.*—Que el demandado se encuentra en posesión de los inmuebles

descritos en la alegación segunda el valor de las cuales es $80,000, y está disfrutándolas ilegalmente y percibiendo sus frutos, rentas e intereses, desde que se verificó la subasta hasta la fecha, en perjuicio de los demandantes, ascendiendo dichos frutos, rentas e intereses a más de $20,000. *Décimo tercero.*—Que Don Antonio Oliver Fontanet falleció el día primero de septiembre de 1899 en Adjuntas, Puerto Rico, hecho que constaba al demandante al iniciar el procedimiento sumario en cobro de su hipoteca bajo testamento en el cual instituyó *por sus únicos y universales herederos a sus hermanos Isabel María y Pedro Oliver y Fontanet,* que aceptaron la herencia. *Décimo cuarto.*—Que Isabel María Oliver y Fontanet falleció en 7 de diciembre de 1903, sucediéndole *ab-intestato* como únicos y universales herederos, sus hijos Antonio Bárbara y Jorge Alcover y Oliver, que aceptaron la herencia. En mérito de lo expuesto a la honorable corte suplico: Primero.— Que declare que la subasta celebrada en este caso y consiguiente venta judicial otorgada a favor de José González, fueron ineficaces para trasmitir al comprador judicial el dominio de los inmuebles hipotecados y subastados por carecer la corte de jurisdicción, por razón de la materia y no haberla adquirido sobre la persona del demandado. Segundo.—Que como consecuencia, se declare igualmente ineficaz la compraventa de dichos inmuebles otorgada por José González al demandado en esta acción, Francisco Oliver Ballester, para trasmitir al comprador el dominio de los mismos. Tercero.—Que se declare que el título de propiedad de dichos inmuebles permaneció en los herederos de Antonio Oliver Fontanet, no obstante los actos ejecutados por la corte sin jurisdicción, que condene al demandado a reintegrarlos a los demandantes, juntamente con sus frutos, rentas e intereses en cantidad no menor de $20,000. Cuarto.—Que se ordene la cancelación en el registro de las inscripciones producidas por la venta judicial a favor de José González y por la compraventa de éste a favor del demandado. Quinto.—Que si no hubiere lugar a los anteriores pedimentos, se condene al demandado a indemnizar a los demandantes en concepto de daños y perjuicios por infracción del contrato, la suma de $100,000."

En los señalamientos de error se alega, primero, que la corte erró al no estimar que existía una buena causa de acción a favor de los demandantes, y por tanto al no desestimar la excepción previa general alegada por el demandado; y segundo, que la corte cometió error al considerar prescrita la acción ejercitada por los demandantes.

El apelante consigna seis cuestiones distintas bajo el primer error alegado y cuatro en el segundo, las cuales son como sigue:

### PRIMER ERROR.

"I. Existe la acción de nulidad de actuaciones de procedimiento ejecutivo hipotecario; sin embargo de que el deudor ejecutado puede recobrar los bienes subastados sin pedir previa y especialmente la nulidad de tales actuaciones.

"II. La Corte de Distrito de Ponce carecía de jurisdicción para conocer del procedimiento ejecutivo hipotecario que originó la venta de los bienes hipotecados, en el tiempo en que conoció de dichos procedimientos.

"III. La Corte de Distrito de Ponce no adquirió jurisdicción sobre la persona del demandado.

"IV. La falta de jurisdicción de la corte produce la nulidad *ab-initio* de todo lo actuado, y una venta judicial decretada por una corte sin jurisdicción no traspasa título al comprador.

"V. Los defectos procesales no jurisdiccionales alegados en la demanda, producen también la nulidad de lo actuado y de la venta; por lo menos en cuanto a personas que no pueden invocar el carácter de tercero.

"VI. No existe la pretendida irrevocabilidad de las ventas judiciales; pero si existiera un estatuto declarando irrevocables, esto es, inatacables las ventas judiciales nulas por falta de jurisdicción (que no existe) sería inconstitucional y nulo."

### SEGUNDO ERROR.

"*Primero.*—Cuando la nulidad no produce la acción, no hay que pedirla.

"*Segundo.*—En este caso la nulidad no produce la acción, por no tener existencia legal los actos de una corte sin jurisdicción.

"*Tercero.*—La acción de nulidad de contrato prescribe a los cuatro años; pero no se discute en este caso la nulidad de un contrato, sino su ineficacia respecto al que no fué parte en el mismo.

"*Cuarto.*—Un estatuto que limitara a cuatro años el tiempo para poder anular una venta judicial ordenada por una corte, sin jurisdicción, sería nulo."

El apelado formula sus razonamientos en apoyo de las dos excepciones previas bajo los párrafos siguientes:

## "PRIMER FUNDAMENTO DE EXCEPCIÓN.

"Que la demanda no aduce hechos suficientes para constituir una causa de acción.

"(*a*) Vicios o defectos de procedimiento que pueden constituir falta de jurisdicción sobre la persona del demandado.

"(*b*) Vicios o defectos de procedimiento que pueden constituir falta de jurisdicción sobre la materia.

"(*c*) Vicios de mera tramitación.

"(*d*) A un comprador en subasta judicial no le afectan los vicios o defectos de mera tramitación de que adolezca el procedimiento.

## "SEGUNDO FUNDAMENTO DE EXCEPCIÓN.

"Que la demanda presentada en este caso no aduce hechos suficientes para constituir una causa de acción a favor de los demandantes, por aparecer de la faz de la misma que ha prescrito la acción de nulidad de contratos en ella ejercitada:

"(*a*) Que una venta judicial es un contrato.

"(*b*) Que la acción de nulidad de contratos, ejercitada en la demanda, ha prescrito.

"(*c*) Que en este pleito los demandantes tienen que pedir previa y necesariamente la nulidad del título del demandado, o sea, del contrato celebrado por él con José González, y. la nulidad de la venta judicial.

"(*d*) Que los demandantes tendrían derecho y acción para pedir tal nulidad a pesar de no haber sido parte en dichos contratos, si tal acción no se hallara prescrita."

Por interesante que pudiera ser la consideración que hiciéramos al discutir ampliamente y resolver en definitiva todas las cuestiones que de tal modo han sido planteadas, ésta consumiría más tiempo del que ahora puede legítimamente dedicársele a este caso y haría que esta opinión resultara demasiado extensa. La mejor práctica, en circunstancias normales, es dar a las cortes de distrito la mayor oportunidad posible a fin de que puedan resolver en primera instancia todas las cuestiones envueltas. No se ha sugerido razón alguna por la que deba hacerse una excepción a la regla general en este caso. La corte inferior no resolvió sino una sola de las dos cuestiones fundamentales que fueron sometidas a su con-

sideración.   Al resolver que la demanda no era susceptible de ser enmendada de tal modo que evitara el resultado de esta decisión, el juez de la corte inferior declaró, sin embargo, incidentalmente, que era indispensable hacer previamente la petición de la nulidad del título para que la acción reivindicatoria pudiera prosperar.   Todas las demás cuestiones discutidas en la apelación solamente serán tomadas en consideración en todo lo que puedan ser necesarias o se relacionen con la resolución de las cuestiones que de tal modo han quedado planteadas.

Si la teoría sustentada por los demandantes relativa a la nulidad absoluta de la ejecución hipotecaria se hubiera fundado solamente en la supuesta violación de la orden militar mencionada en la demanda, entonces, en vista de la posibilidad de resolver el caso en definitiva, podríamos habernos sentido obligados a considerar en sus méritos la cuestión algo dudosa de si el razonamiento de la Corte Suprema de los Estados Unidos en el caso de *Ochoa* v. *Hernández,* 230 U. S., 139, debe regular el presente caso; pero prescindiendo de cualquiera que sea la conclusión a que pudiéramos llegar en este sentido, el caso debe ser devuelto para ulteriores procedimientos, según el criterio que tenemos de la cuestión que realmente fué resuelta por la corte de distrito, y de nada serviría que resolviéramos ahora con respecto a la validez de dicha orden general.   Además, aunque apenas puede negarse que gran parte de los razonamientos expresados en el curso de la opinión en el caso de Ochoa a primera vista parece ser más o menos aplicable por analogía a la orden general que aquí se discute, existen, sin embargo, muchos puntos diferentes que sugieren distinciones de importancia que han de ser establecidas y verdaderas consideraciones que hasta ahora no han sido tratadas por ninguna de las partes en este pleito, y a la doctrina establecida en ese caso no ha de dársele ligeramente el alcance de que regula la cuestión que ahora se discute.   Por tanto, creemos, que atendidas todas

las circunstancias, lo más conveniente es dejar por ahora sin resolver esta cuestión.

Para los fines de esta opinión podemos admitir la primera proposición del apelado de que "una venta judicial· es un contrato."

El Código Civil Revisado prescribe:

"Art. 1221.—El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio."

"Art. 1224.—Los contratos sólo producen efecto entre las partes que los otorgan y sus herederos  *  *  *.

"Art. 1226.—Ninguno puede contratar a nombre de otro sin estar por éste autorizado o sin que tenga por la ley su representación legal.

"Art. 1228.—No hay contrato sino cuando concurren los requisitos siguientes:

"1. Consentimiento de los contratantes.

  *      *      *      *      *      *      *

"3. Causa de la obligación que se establezca.

"Art. 1232.—Será nulo el consentimiento prestado por error, violencia, intimidación o dolo.

"Art. 1242.—Los contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral.

"Art. 1243.—La expresión de una causa falsa·en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita.

"Art. 1257.—Los contratos válidamente celebrados pueden rescindirse en los casos establecidos por la ley.

"Art. 1266.—La acción para pedir la rescisión dura cuatro años  *  *  *.

"Art. 1267.—Los contratos en que *concurran los requisitos que expresa* el artículo 1228 pueden ser *anulados* aunque no haya lesión para los contratantes, siempre que adolezcan de *alguno de los vicios que los invalidan* con arreglo a la ley.

"Art. 1268.—La acción de nulidad sólo durará cuatro años.

"Este tiempo empezará a correr;

"En los casos de intimidación o violencia, desde el día en que éstas hubiesen cesado;

"En los de error, o dolo, o falsedad de la causa, desde la consumación del contrato;

"Cuando la acción se dirija a invalidar contratos hechos por mujer casada, sin licencia o autorización competente, desde el día de la disolución del matrimonio;

"Y cuando se refiere a los contratos celebrados por los menores o incapacitados, desde que salieren de tutela.

"Art. 1276.—La acción de nulidad queda extinguida desde el momento en que el contrato haya sido confirmado válidamente.

"Art. 1280.—La *confirmación* purifica al contrato de *los vicios* de que adoleciera desde el momento de su celebración."

Ciertamente que el término de prescripción de cuatro años que se fija para las acciones de nulidad es aplicable únicamente a los contratos "en que concurran los requisitos que expresa el artículo 1228." Considerando la venta judicial como un contrato en el que la corte o su representante oficial debidamente autorizado sustituye al verdadero vendedor cuyo "consentimiento" lo da la corte por una ficción legal paradógica, la corte, sin embargo, tiene que tener jurisdicción por lo menos de la materia en controversia, y ordinariamente sobre la persona del demandado. Las cortes son organismos creados por la ley y la facultad para considerar y resolver la materia objeto de la controversia es la definición ordinaria y ciertamente la esencia misma de la jurisdicción. Y si la ley exige que se notifique personalmente el emplazamiento al demandado, o en forma equivalente, como requisito previo indispensable para el ejercicio de dicha jurisdicción, entonces la corte, si no existe tal notificación previa, carece enteramente de facultad para dar tal consentimiento, como ocurriría en el caso de cualquier individuo particular que no estuviera autorizado. El "consentimiento de las partes contratantes," requerido por el artículo 1228, falta por completo en uno u otro caso, y según el lenguaje sencillo de ese artículo "no hay contrato." No hay nada por "anularse," dentro del significado del artículo 1267, nada en que pueda fundarse "la acción de nulidad" a que se refiere el artículo 1268. De aquí se infiere que la prescripción alegada no constituye defensa alguna en una acción reivindicatoria de bienes inmuebles así vendidos.

El principio fundamental en que descansa la bien cono-
cida diferencia que existe entre lo que son contratos nulos
y anulables se destaca a través de la muy luminosa discu-
sión hecha por Manresa de los artículos 1257, 1259, 1261,
1263, 1264, 1265, 1275, 1276, 1299, 1300 y 1301 del Código Espa-
ñol que son equivalentes a los artículos citados anteriormente
de nuestro código si agregamos a los mismos los artículos
1230 y 1231 cuya cita así como la de otros más o menos corre-
lativos hemos omitido con objeto de ser breves. Será bas-
tante hacer asimismo referencia sin citas o argumentación
al tomo 8 de los comentarios (edición de 1907) páginas 613
y siguientes, 623, 628, 639, 644, 681, 683, 252, 766, 771, 774
y 777.

En el caso de *Vázquez* v. *Vázquez,* 15 D. P. R., 89, los *here-
deros* de un *vendedor,* trataron después de su muerte, de
anular una escritura que según su faz era válida, y *que fué
otorgada por dicho vendedor personalmente,* por el funda-
mento de que la escritura era *simulada* o *falsa,* que no hubo
verdadera venta y que el comprador en realidad tenía la
propiedad *en depósito* para beneficio del *otorgante y sus here-
deros.* Los apelantes alegaron que existía ''una diferencia en-
tre un contrato válidamente celebrado y otro que es simulado
y que la parte contra la cual se establece la acción es un sim-
ple depositario.'' No consta bajo qué teoría se pretendió
establecer la diferencia alegada. Cualquiera que fuera no
parece haber encontrado apoyo alguno en el tribunal. No
es preciso que tratemos de la gran diferencia que existe
entre la falta total de causa y una causa simulada a que tanto
se llama la atención por Manresa en la obra que acaba de
citarse. No hay nada que muestre que la cuestión de si la
escritura era enteramente nula o meramente anulable estaba
envuelta de modo alguno en el caso de Vázquez. Ciertamente
que no parece haber estado en la mente de la corte. No existe
el más remoto indicio de ningún elemento relativo a una ac-
ción reivindicatoria, ni de ninguna otra acción en contra-
posición a una ''de nulidad'' pura y simple.

En el caso de *Agostini* v. *Philippi,* 16 D. P. R., 665, este tribunal se expresó como sigue:

"La *acción* ejercitada fué *la de nulidad del contrato* de cesión de derechos y acciones celebrado por escritura pública el· día 18 de octubre de 1898 *por el demandante* y uno de los demandados y los *motivos* alegados para *solicitarla* fueron que los demandados *obtuvieron el consentimiento* del demandante por *medios engañosos* y que la *causa o consideración consignada* en el contrato *era falsa.* (La bastardilla es nuestra.)

"No se trata pues, *de un contrato inexistente, sino en todo caso nulo; esto es, no ha habido ausencia absoluta de los elementos esenciales del contrato, sino existencia viciosa, pero existencia al fin, de aquellos elementos necesarios, y el caso cae dentro de las claras prescripciones del artículo 1268 del Código Civil revisado* \* \* \*. (La bastardilla es nuestra.)

"*La acción de nulidad* es la *fundamental* en este caso. El demandante no la ejercitó ante los tribunales sino después de transcurridos más de diez años de consumado el contrato; esto es, cuando ya, de acuerdo con la ley, tal contrato había quedado convalidado y no podía servir de base para una reclamación contraria a sus propias cláusulas que debían considerarse a virtud de la convalidación como expresivas de la verdad. Véase *Vázquez* v. *Vázquez,* 15 D. P. R., 89, decidido por esta corte el 17 de febrero de 1909." (La bastardilla es nuestra.)

En el caso de *Sucesores de Lampón* v. *Sucesores de Rivera,* 16 D. P. R., 345, que fué otro caso en que se alegó que la venta era simulada, se distingue claramente el caso por lo siguiente:

"Faltan pruebas en el juicio demostrativas de la *simulación del contrato* de compraventa que entraña la escritura de 11 de julio de 1873, pero aunque *tal simulación* existiera, la acción hubiera prescrito, por lo que huelga discutir si los *herederos de Ramón Lampón* han podido impugnar la validez de dicha escritura *contradiciendo los actos de su padre.*" (Bastardilla nuestra.)

En el caso de *Sucesión Jiménez* v.· *Ahumada et al.,* 14 D. P. R., 295, en el sumario se expresa lo siguiente:

"Ejercitándose en una demanda la acción de *nulidad* y la de *rescisión* de contrato, fundada en *error, dolo y falsedad de la causa,* sin alegar hecho alguno· que interrumpa ·la prescripción, puede ale-

garse con éxito la excepción previa general de que la demanda no aduce hechos suficientes para determinar una causa de acción, por estar prescrita ésta, por haberse ejercitado después de los cuatro años de consumado el contrato." (Bastardilla nuestra.)

Y, finalmente, en el caso de *Diez & Arrarás* v. *Bascos et al.*, 5 D. P. R., 97, (1ª. edición), la única parte de la opinión que hace referencia a la proposición del apelante es la siguiente:

"El *error* y *dolo que alega* en su favor Da. Narcisa Bascos y que no se presumen nunca no se han demostrado, pero aun suponiendo lo contrario, siempre resultaría que la acción de nulidad ha prescrito por el transcurso del término legal que la ley concede para ejercitar con fruto ese derecho."

De modo que todos los casos citados por el apelado claramente están comprendidos en los que han sido enumerados en el tercer grupo que se determina expresamente en el artículo 1268, al fijar la fecha en que ha de empezar a correr el término prescrito. El argumento del apelado toma por punto de partida lo expresado por Manresa, de que "el contrato *supuesto o falso,* en cuanto lo es y se demuestre, destruyendo así la *apariencia* del mismo, *es el caso más claro de inexistencia, a tal extremo, que en él se identifican el sentido usual y el jurídico de esa palabra.*" Ahora bien, prescindiendo enteramente de la clara distinción establecida por Manresa entre *simulados* o *ficticios* y lo que él llama *supuestos o falsos"* contratos, y en una gran confusión de términos, continúa el argumento fundado en la teoría de que "un contrato *simulado* es el caso *típico* de *inexistencia de contrato.*" Y como preámbulo a este razonamiento respecto a la cuestión de prescripción, dice el apelado:

"Si en la discusión de esta cuestión fuera necesario entrar a considerar la distinción que hacen los comentaristas del Código Civil de los contratos nulos de aquellos que califican de inexistentes, sería interminable esta discusión. Nosotros nos creemos excusados de entrar en la consideración de ese extremo, porque sea un contrato nulo, o sea un contrato inexistente aquel cuya nulidad se solicite, siempre

estará comprendido en los términos del artículo 1268 del Código
Civil, que sólo concede para pedir su nulidad el término de cuatro
años. Esa es la opinión del Sr. Scaevola: * * *.''

La cuestión es tan elemental, que no es necesario discutir
más para demostrar que los casos citados, en ninguno de
los cuales existe ninguna duda de importancia respecto al
principal objeto de anular un contrato válido según su faz,
y en cada uno de los cuales la acción fué establecida, no por
un tercero alegando la nulidad absoluta del documento que
se impugna, sino por las partes en el contrato, que a lo sumo
es anulable, o por sus herederos, no sostienen la proposición
alegada por el apelado como segundo fundamento de excep-
ción.

La verdadera cuestión sometida a nuestra consideración
fué totalmente resuelta por este tribunal en el reciente caso
de *Sucesión Suro* v. *Sucesión Prado,* 21 D. P. R., 241. No
es preciso repetir ahora lo que dijimos en dicho caso. Está
en perfecta harmonía con las diferencias establecidas y los
principios elementales consignados en el Código Civil y por
su más autorizado y moderno comentarista en las páginas
citadas y con la tendencia general de las decisiones ante-
riores de este tribunal y de la Corte Suprema de España.
No se diferencia en principio del caso de autos y es termi-
nante en cuanto al punto que aparece envuelto en primer
término en este caso.

Aquí podríamos terminar si la corte inferior no hubiera
resuelto también incidentalmente en su opinión que ''es indis-
pensable en el caso presente hacer previamente la petición
de nulidad del título del demandado, como lo hacían los de-
mandantes en su citada demanda original, y como necesaria-
mente tenían que hacerlo para que la acción reivindicatoria
pudiera prosperar;'' * * * que ''los demandantes en su
demanda enmendada en realidad establecieron una acción de
nulidad;'' * * * y que ''los hechos alegados en la de-
manda demuestran claramente que la acción reivindicatoria
que se ejercita se deriva y es una consecuencia de la nulidad

de los contratos referidos siendo inmaterial que en la súplica no se pida que la corte declare nulos los referidos contratos.''

En estas condiciones el guardar silencio por nuestra parte en lo que respecta a la cuestión que presenta el apelado en su tercera proposición (*c*) bajo el segundo fundamento de excepción, cuestión que es de gran importancia, podría interpretarse como una conformidad tácita con la conclusión a que llegó la corte inferior e inducir así a las partes a su perjuicio.   Por tanto, consideraremos ligeramente el alegato escrito del apelado en cuanto al particular.   Es como sigue:

''(*c*) Que en este caso los demandantes tienen que pedir necesariamente la nulidad del título del demandado, o sea, del contrato celebrado por él con José González, y la nulidad de la venta judicial.

''La doctrina relativa a los casos en que es necesario pedir previamente la nulidad del título del demandado, para que pueda ejercitarse con éxito la acción reivindicatoria, se encuentra claramente expuesta en un caso resuelto por el Tribunal Supremo de España, y que dice así.

'' 'No puede entablarse con éxito la acción reivindicatoria contra el poseedor de una cosa que la tiene con algún título, sin que preceda el ejercicio de otra acción adecuada para destruirlo, en los casos en que *de la nulidad del título del demandado surja el derecho que ejercita el actor,* pero tal doctrina no es aplicable cuando ambas partes derivan sus respectivos derechos de documentos y hechos *distintos, sin relación ni dependencia entre los traídos por el actor y los aducidos por la parte demandada,* quedando en este concepto reducido el litigio a la discusión sobre el valor, eficacia y preferencia de los documentos o datos que respectivamente sirvieron de fundamento a las partes.'

''70 Juris. Civ., 596.

''65 Juris. Civ., 528.

''Apliquemos la doctrina precedente al caso de autos y veamos si los demandantes tienen que solicitar previamente, como han solicitado en la demanda, la nulidad del título del demandado, para que pueda prosperar la acción reivindicatoria que en ella ejercitan.

''El título que los demandantes ostentan es el de herederos de don Antonio Oliver Fontanet, o sea *el deudor,* en el procedimiento hipotecario en que se vendieron las fincas reclamadas: los demandantes alegan en su demanda que las actuaciones de ese juicio son

*nulas, y como consecuencia de esa nulidad,* que es *nula,* asimismo, la venta judicial a favor de José González, quien no pudo adquirir ningún título sobre los bienes subastados, y no pudo tampoco transmitirlo al demandado Francisco Oliver, siendo, por tanto, también *nulo* el título que sobre dichos bienes ostenta el mencionado Oliver.   De modo que los demandantes *se fundan* en la *supuesta nulidad del título* del demandado Oliver, para reivindicar, luego en este caso es indispensable pedir previamente la nulidad de ese título.   No se puede dudar ni discutir por un momento, que en este caso *la nulidad es la que produce la acción,* y lo demostramos con la siguiente pregunta: ¿Si los demandantes aceptaran que las actuaciones del juicio ejecutivo son válidas, y por consiguiente, que la venta judicial a favor de José González es válida, y que el contrato de venta que éste otorgó a favor del demandado Oliver es asimismo válido, tendrían acción para reivindicar los bienes hipotecados y que reclaman en la demanda? No; luego es consecuencia indiscutible la de que, en este caso, *la nulidad es la que produce* la acción, es decir, la *supuesta* nulidad.

"Además, la doctrina exige que esa nulidad hay que pedirla previamente siempre que ambas partes deriven sus respectivos derechos de documentos y hechos que no sean distintos, sino que estén relacionados y dependan unos de otros.   Veamos si se dan estas condiciones en el caso de autos: el título de los demandantes es el de su causante, o sea el deudor don Antonio Oliver Fontanet, pues, precisamente el título que adquirió José González en la venta judicial lo deriva del mismo Antonio Oliver Fontanet, que era el deudor en el procedimiento hipotecario, y a su vez, el título del demandado Francisco Oliver y Ballester se deriva del de José González, luego en este caso hay una perfecta dependencia y relación entre el título de los demandantes (que es el mismo de su causante, o sea, el deudor) y el título de José González y del demandado Francisco Oliver.   Luego hay que aplicar la doctrina y estimar que los demandantes tenían que solicitar, como han solicitado en su demanda, la nulidad del título del demandado.

" 'Las acciones que se fundan en la nulidad de un acto u obligación, o de un documento público y solemne, no pueden ejercitarse útilmente, sin que primero se demande o haya obtenido la declaración de dicha nulidad según la jurisprudencia y doctrina legal admitida por los tribunales, y reiteradamente consignada por el Supremo.' "

"16 Juris. Civ., 389.

"11 Juris. Civ., 558.

"Mas, este honorable tribunal ha resuelto dos casos que ilustran perfectamente la cuestión referente a cuando hay que pedir la nulidad del título del demandado y cuando es innecesario hacer tal petición, estableciendo, desde luego, la misma doctrina, o sea, la de que siempre que el título del demandante y del demandado procedan de igual origen, hay que pedir la nulidad previamente; si proceden de distinto origen, no es necesario hacer tal petición previamente.

"En el caso de *Sucesión Nieves* v. *Sucesión Sánchez,* 17 D. P. R., 878, los demandantes reclamaban un condominio' sobre dos fincas, a título de herederos de su madre, alegando que muerta ésta, el viudo, o sea el padre de los demandantes había vendido dichas dos fincas al padre de los demandados, como si le hubieran pertenecido exclusivamente, cuando dichas fincas pertenecían a la sociedad de gananciales, y por tanto la madre de los demandantes era dueña de una mitad de las fincas.    Este tribunal resolvió que en este caso no tenían los demandantes que pedir la nulidad del título de los demandados, porque la acción reivindicatoria era independiente de esa nulidad, y cita cuatro sentencias del Tribunal Supremo de España que establecen la doctrina de que cuando la nulidad no produce la acción, no hay que pedirla previamente.    Es bien claro que en ese caso la nulidad no producía la acción, porque los demandantes fundaban su derecho en el título que por gananciales correspondía a su madre, título que jamás fué transmitido por ésta a ninguna persona, y en ninguna forma, es decir, ni con vicios de nulidad, ni sin vicio alguno.    En la demanda presentada en ese caso no se alegó que el título del demandado fuera nulo, ni se estableció ningún hecho determinante de esa nulidad: se · alegó, sí, que el padre de los demandantes no era dueño exclusivo de esos bienes, pues una mitad correspondía a la madre de los demandantes, y por fallecimiento de ésta, a sus herederos demandantes. El caso no puede ser más sencillo y más claro: si los demandantes no se fundaban en ningún motivo que viciara de nulidad el título del demandado, ¿cómo habían de pedir la declaración de tal nulidad? El título de los demandados no procedía en ese caso del mismo origen de que procedía el título de los demandantes, pues éstos derivaban su acción del título de su madre, mientras que los demandados derivaban su derecho de una persona distinta, o sea, el padre de los demandantes, luego uno y otro título no tenían relación, ni dependencia, entre sí, circunstancia por la cual había que estimar, como estimó el Tribunal Supremo, que no es necesario pedir previamente la nulidad del título del demandado.

*Sucesión Nieves* v. *Sucesión Sánchez,* 17 D. P. R., 877.

"Veamos el otro caso en que el Tribunal Supremo resolvió que era indispensable haber solicitado previamente la nulidad del título del demandado, y que como esta nulidad no se pidió, tenía que desestimarse la demanda.

"En el caso a que vamos a referirnos, se alegó por los demandantes que una concesión de riego y un predio de terreno que trataban de reivindicar no fué legalmente incluída en una escritura de venta que el causante de los demandantes otorgó a favor de los demandados, de parte de la hacienda 'Adela,' y el Tribunal Supremo se expresa así:

"'Pero al leer la demanda, sobre todos los hechos marcados con los números 24 y 25, parece que la acción reivindicatoria que se ejercita se funda en el supuesto de que el título de don Ciprián Blondet, causante de la sucesión hoy demandante, no fué legal y legítimamente transmitido a los poseedores demandados.

"'De modo que lo que se sostiene en realidad es que la transmisión del riego y del predio a los demandados es nula. La nulidad entonces es la que produce la acción y resulta, por tanto, que el derecho de reivindicar no es independiente, de la nulidad, luego ha sido necesario pedir antes, la nulidad del título de los demandados, pues solo anulándose podía recobrar su fuerza el título de los demandantes, porque de otro modo dichos títulos no pueden subsistir y armonizarse. Sentencias del Tribunal Supremo de España de 27 de junio de 1867, 16 de octubre de 1873 y 22 de mayo de 1889.

"'En la súplica de la demanda, ni en ninguna parte de ella, se pide la nulidad del título de los demandados, ni de la inscripción que en el registro de la propiedad ocasionó.

"'Se confirma la sentencia apelada que desestimó la demanda con las costas.

"*Sucesión Blondet* v. *Fantauzzi Hnos.*, 14 D. P. R., 329.

"Los hechos de ese caso son exactamente iguales a los hechos del caso de autos: en éste, como en aquél, alegan los demandantes que el título de su causante, o sea el deudor, no fué legal y legítimamente transmitido por la corte actuando a nombre del deudor, al comprador judicial José González, por lo que éste tampoco pudo transmitirlo, legal y legítimamente, al demandado Francisco Oliver, luego en este caso, como en el de *Blondet* v. *Fantauzzi,* lo que se sostiene en realidad es (usando las mismas palabras de este honorable tribunal), que la transmisión de los bienes hipotecados al demandado Oliver es nula, la nulidad entonces es la que produce la acción, y resulta, por tanto, que el derecho de reivindicar no es independiente de la nulidad, luego

ha sido necesario pedir antes la nulidad del título de los demandados (como lo han hecho los demandantes), pues solo anulándose puede recobrar su fuerza el título de los demandantes, porque de otro modo dichos títulos no pueden subsistir y armonizarse.

"Pero la misma parte contraria reconoce la virtualidad de la doctrina por esta parte sustentada, y la formula en los propios términos en que la formulamos nosotros: 'El verdadero *test* (dice en la página 43 de su alegato) de si es necesario pedir, o no la nulidad, es: ¿la nulidad produce la acción reivindicatoria, o no? Si no la produce, si la acción es independiente de la nulidad, puede reivindicarse sin pedirse la nulidad previa.' Pues bien, elimínense de la demanda de autos los hechos que se refieren a los supuestos vicios de nulidad del procedimiento y  *  *  *  ¿qué quedaría? El hecho referente a la comparecencia del demandante, los productos producidos por la finca, la súplica. ¿Son suficientes éstos hechos para reivindicar? Es claro que no. Luego los hechos determinantes de la nulidad de los títulos del demandado son los que única y exclusivamente constituyen la causa de acción, es decir, la producen. ¿Sucedería lo propio en el caso de *Sucesión Nieves* v. *Sucesión Sánchez,* que pretende la parte contraria que es idéntico al de autos? De ninguna manera. Los demandantes en dicho caso sólo tenían que alegar el título de su madre sobre los bienes que trataban de reivindicar, y no tenían que hacer referencia alguna al título de los demandados, que era distinto del de aquellos, con el que no tenía relación, ni dependencia de clase alguna; los demandados hubieran alegado su título, en la contestación, y si el tribunal estimaba que era procedente la acción reivindicadora de los demandantes, es decir, que su madre nunca transmitió a persona alguna su dominio, ni legal, ni ilegalmente, ni lo hizo ningún tribunal a su nombre ni legal ni ilegalmente, entonces, como consecuencia indeclinable de la acción deducida, decretaría la nulidad del título de los demandados, y eso mismo ocurriría si el abogado de la parte contraria vendiera la Casa Blanca a los abogados de esta parte, en el ejemplo que propone en su alegato: ya podrían pasar, no ya cuatro, sino cien años, que nunca podría invocarse la prescripción de la acción de nulidad, por la sencillísima razón de que jamás tendría que ejercitarse: su verdadero dueño siempre se fundaría en su título no transmitido a nadie, ni transmitido a nombre suyo por ninguna corte, y no tendría para qué ocuparse del que el señor Tous nos hubiera conferido.

"No comprendemos qué aplicación pueden tener a este caso, los citados por la parte contraria en la página 45 de su alegato. Este

caso está regulado por nuestra Ley Hipotecaria, que concede precisamente la acción de nulidad de actuaciones contra el acreedor ejecutante. Repetimos que la ley no autoriza la acción contra el comprador judicial, ni el embargo de la finca subastada, sino la retención del producto de su venta, para asegurar la efectividad de la sentencia que contra el acreedor pueda dictarse, lo que constituye una prueba concluyente de que el comprador adquiere la finca libre de toda responsabilidad. Y repetimos, además, que en el procedimiento hipotecario no ha habido falta alguna de jurisdicción, y que de ningún modo puede aplicarse al caso de autos, la jurisprudencia citada por la parte contraria, que se funda toda ella en sentencias dictadas sin jurisdicción, e interpreta estatutos completamente distintos a los que regían cuando se siguió el referido procedimiento hipotecario.

"La sentencia de octubre 27, 1882, 50 Juris. Civ., 236, que cita el apelante en la página 49 de su alegato, sostiene por completo nuestra contención, pues los demandantes fundaban la acción reivindicatoria en la fuerza de sus propios títulos, y no en los vicios o defectos de que pudiera adolecer el título del demandado, que era distinto del de los demandantes.

"Véase la sentencia de mayo 9, 1862, 7 Juris. Civ., 322, que es un caso igual al de autos. En él se adjudicó judicialmente una finca, reservando el demandante los derechos que sobre ella pudiera tener; el adjudicatario traspasó dicha finca al demandado, y el Tribunal Supremo de España resolvió que como la acción no se había entablado dentro del cuadrienio legal, había quedado extinguida."

Ambos extractos tomados de las dos decisiones que han sido citadas en primer término por el apelado limitan expresamente la aplicación del estatuto de prescripción a casos en los cuales "el derecho de acción del demandante nace de la nulidad del título del demandado," y en uno de ellos se afirma enfáticamente que los casos en que el demandante y demandado no deriven el título del mismo origen constituyen una excepción de la regla. Y aquí también encontramos el defecto fundamental de un gran hiato en la premisa que surge de una confusión de términos, y además de esto una clara discordancia *non sequitur* entre la premisa y la conclusión. Suponer que el *deudor* en el procedimiento hipotecario es el verdadero *vendedor* en la venta judicial, es simplemente dar por sentada la cuestión vital que se discute.

Ni tampoco la cuestión propuesta y la contestación formulada a ella por el apelado sostienen la conclusión que se pretende derivar de la misma. La proposición así expresada puede ser generalizada de este modo: ''Si el demandante en cualquier acción reivindicatoria admitiera al principio la superioridad del título del demandado, ¿podría él reivindicar entonces? No; *por tanto,* su derecho a reivindicar ha de depender de la falta de solidez del título de su adversario y no de la fortaleza del suyo,'' conclusión que subvierte la regla más fundamental en acciones sobre reivindicación de bienes inmuebles, tanto en las jurisdicciones de la ley común como en la civil, y es un claro *reduction ad absurdum.*

Supongamos que en el presente caso los demandantes, en lo que respecta a los títulos en cuestión, meramente habían alegado que son los dueños de las fincas en cuestión, presentando toda su documentación de títulos, y que el demandado detentaba indebida e ilegalmente la posesión de las mismas. Seguramente que el demandado no alegaría que tal demanda no determina una causa de acción por no especificarse el título del demandado en previsión de lo que pudiera ser la defensa. Supongamos además que el demandado contestara alegando su título con tal claridad de detalles que los supuestos defectos jurisdiccionales aparecieran de la faz de la contestación y que el demandante formulara excepción por el fundamento de que los hechos así expresados en la contestación no constituyen una defensa por resultar de su faz que el procedimiento ejecutivo hipotecario y la venta realizada de acuerdo con el mismo eran absolutamente nulos y sin ningún valor por falta de jurisdicción en el asunto. Claramente que entonces estaríamos frente a cuestiones idénticas a las comprendidas en este caso y difícilmente podríamos considerar que en realidad dicha acción es una acción personal para anular dichos procedimientos y el título del demandado obtenido de acuerdo con los mismos, establecida a manera de una acción reivindicatoria. Y el mero hecho de que los demandantes

creyeran conveniente anticipar la defensa haciendo constar el título en el cual ellos entienden que se funda el demandado y alegar hechos que ellos sostienen que demuestran que dicho título es enteramente nulo y sin ningún valor, no varía necesariamente la naturaleza de la acción. Ni admitiendo en pro del argumento la solidez de la alegación de los demandantes respecto a la naturaleza jurisdiccional de los hechos alegados, vemos en el caso de considerar por sus méritos la cuestión planteada en el caso hipotético de referencia por la prueba de un título *prima facie* de un derecho absoluto en los demandantes y de un título completamente nulo por su faz como única defensa, por qué la corte no podía dictar sentencia para que fueran reivindicadas las fincas en cuestión por el fundamento de que el título *prima facie* de los demandantes no estaba afectado por ninguno de los procedimientos o escrituras que formaban la cadena de títulos del demandado sin anular expresamente o dejar sin efecto algunas de estas escrituras. Ciertamente que los apelados admiten esto en sustancia en su argumento y en realidad las partes están prácticamente de acuerdo en cuanto a la ley en principio y solamente difieren en lo que respecta a la aplicación que ha de darse a ésta en el presente caso.

La diferencia está bien expresada en las citas y discusión que ambas partes hacen del caso de Nieves, entre otros; y en el que ahora consideramos también es inevitable la conclusión de que los apelantes presentan mejor sus razones. Copiamos de su alegato lo que sigue:

"El verdadero *test* de si es necesario pedir o no la nulidad, es: la nulidad produce la acción reivindicatoria o no. Si no la produce, si la acción es independiente de la nulidad, puede reivindicarse sin pedirse la nulidad previa. Tal es nuestro caso. Exactamente igual al de *Sucesión Nieves* v. *Sucesión Sánchez,* 17 D. P. R., 875. Cleto Estrella vendió los bienes de sus hijos que no podía vender. La corte vendió los bienes de Oliver Fontanet, que no podía vender. Los hijos de Cleto Estrella, que no quedaron obligados por la venta que efectuó

su padre, podían reivindicar, sin pedir la nulidad (aunque la pidieron). Oliver Fontanet (o sus herederos) pueden reivindicar los bienes suyos que vendió la corte, ya que ésta venta no les obligó ni les privó de ningún derecho. Si la venta no autorizada se inscribió o no se inscribió es cuestión, que nada tiene que ver con la cuestión de si debe o no pedirse la nulidad de la compraventa. Una cosa es la compraventa, y otra distinta la inscripción.

"El caso de *Sucesión Nieves* v. *Sucesión Sánchez,* 17 D. P. R., 876, resuelve plenamente la cuestión. Cleto Estrella, fallecida su esposa, vendió ciertos bienes inmuebles gananciales sin proceder la liquidación de la herencia de su consorte. Los herederos establecieron la acción reivindicatoria contra el comprador y poseedor. Este alegó la falta de causa de acción por haber prescrito la acción de nulidad del contrato de compraventa celebrado entre Cleto Estrella y Benito Sánchez, causante de los demandados, de acuerdo con el artículo 1268 del Código Civil.

"En la demanda se pidió expresamente la nulidad de dicho contrato.

"La corte resolviendo este caso dijo:

" 'Estudiado cuidadosamente el caso, no podemos estar conformes con el fundamento de la sentencia apelada. La acción ejercitada por la demandante es de reivindicación, independiente de la nulidad del título de la demandada.

" 'La doctrina legal de que cuando se ejercita la acción reivindicatoria contra personas que están en posesión de la cosa objeto del pleito en virtud de un título que se tenía por legítimo, es preciso que antes se pida la nulidad de éste, solo tiene aplicación cuando la nulidad produce la acción, pero no cuando el derecho de reivindicar es independiente de ella. (Sentencia del Tribunal Supremo de España de 16 de octubre de 1873.) Fundándose la acción reivindicatoria en un derecho reconocido como pre-existente al del título que ostenta el demandado, es innecesario pedir previa y separadamente la nulidad de dicho título, porque no nacía de ella la acción del demandante, sino que es consecuencia de la que ha deducido. (Sentencia del Tribunal Supremo de España de 17 de enero de 1889.) Es inaceptable el principio de que no puede entablarse la acción reivindicatoria contra el poseedor que tiene título más o menos firme inscrito en el registro de la propiedad sin que proceda a otra acción que, conforme a derecho sea adecuada para destruirlo, cuando la entablada no tiene otro objeto que el de perseguir el inmueble que el deman-

dante reclama como dueño, pero no en el concepto de que el título del demandado sea más o menos eficaz. (Sentencia del Tribunal Supremo de España de 6 de abril de 1889.)

"'El que funda la acción reivindicatoria en un título independiente del de los poseedores, no está obligado a pedir y obtener la nulidad de éste para que prevalezca su acción. (Sentencia del Tribunal Supremo de España de 13 de febrero de 1892.)'"

Los apelantes citan también la sentencia de la Corte Suprema de España dictada en marzo 18, 1904, (*Gaceta* de mayo 1913); *Scaevola, Jurisprudencia al Código Civil,* 1904, página 177; y sentencia de octubre 27, 1882, Jurisp. Civil, tomo 50, página 236. Según ha sido indicado por los apelantes, la regla parece ser igual en Louisiana. *Doucet* v. *Fenelon,* 120 La., 18; *Bledsoe* v. *Erwin,* 33 La. Ann., 615; *Heirs of Woods* v. *Nicholls,* 33 La. Ann., 744; *Beland* v. *Gebelin,* 46 La. Ann., 326; *Heirs of John Ford* v. *Mills,* 46 La. Ann., 331; *Dauterive* v. *Opera House Association,* 46 La. Ann., 1316; *Mays* v. *Witkowski,* 46 La. Ann., 1475.

Tanto la regla general como su excepción están tan bien establecidas y la distinción entre una y otra es tan clara y universalmente determinada, que sería superfluo el prolongar la discusión. La única verdadera diferencia entre las partes, como ya hemos indicado, surge más bien de la cuestión relativa a si este caso está comprendido en la regla o en la excepción. Entendemos que está claramente comprendido en la última.

No sostenemos que la demanda determine una causa de acción. Puede ser que la excepción previa formulada por el demandado en esta corte no deje de tener fundamento, o que por otras razones además de la alegada por el demandado y sostenida por la corte de distrito, la demanda es insuficiente. De todos modos, existen, como hemos dicho, cuestiones que han de ser resueltas primeramente por la corte de distrito, dando a los demandantes amplia oportunidad para hacer enmiendas, si fuere necesario, siempre que éstas sean posibles, antes de hacerlos incurrir en el gasto, molestia e

inconvenientes de otra apelación. Simplemente resolvemos que la acción de los demandantes ya sea puramente reivindicatoria o de otra clase, no ha prescrito de acuerdo con el artículo 1268 del Código Civil; que ni la alegación de la documentación que forma el título del demandado ni la súplica solicitando su nulidad es un requisito indispensable de la acción, considerada como una acción reivindicatoria, y que el mero hecho de que los demandantes se resolvieran así a anticipar una defensa posible alegando la nulidad absoluta del título del demandado no le quita necesariamente al procedimiento su verdadero carácter, o lo convierte en una "acción de nulidad." Fuera de esto nada resolvemos.

Debe revocarse la sentencia y devolverse los autos para ulteriores procedimientos que no sean incompatibles con esta opinión.

> *Revocada la sentencia apelada ordenándose a*
> *la corte inferior que continúe conociendo del*
> *pleito de acuerdo con la ley.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf firmó "conforme con la revocación."

### OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF.

Estoy de acuerdo con gran parte del razonamiento de la corte en este caso pero me parece, de conformidad con dicho razonamiento, que realmente la demanda expresaba una causa de acción aunque tal vez no muy claramente, y que la causa de acción no había prescrito. Creo que consta suficientemente el hecho de que la Corte de Distrito de Ponce carecía de jurisdicción en los procedimientos sobre ejecución de hipoteca. Por consiguiente entiendo que la excepción previa debió haber sido desestimada por este Tribunal y devuelto el caso para ulteriores procedimientos.