Santiago Iglesias Silva, demandante y apelante, *v.* Banco de Ponce, demandado y apelado.

Núm. 7882.—*Sometido:* Diciembre 15, 1939. *Resuelto:* Junio 12, 1940.

*Cayetano Coll Cuchí,* abogado del apelante; *Vicente Zayas Pizarro,* abogado del apelado.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Una de las cuestiones envueltas en este recurso es la naturaleza de la acción. El alegato del apelante está suscrito por un letrado que compareció en el caso por primera vez durante el juicio. La demanda había sido suscrita por otros dos abogados, uno de los cuales también compareció durante el juicio. Con anterioridad a éste la corte de distrito declaró sin lugar una excepción previa a la demanda fundada en falta de hechos suficientes para determinar una causa de acción. Luego el demandado adujo como defensa especial en su contestación que la causa había prescrito de conformidad con el artículo 1868 del Código Civil (ed. 1930). Éste fué uno de los motivos en que la corte de distrito, luego

de celebrarse un juicio sobre los méritos del caso, basó su sentencia declarando sin lugar la demanda.

El demandante alegó substancialmente:

Que allá para el mes de enero de 1931 Santiago Iglesias Silva solicitó y obtuvo, mediante la prestación de suficiente garantía aceptada por el banco demandado, un préstamo por la suma de $100,000. Al concederle el banco dicho préstamo, le puso como una de sus condiciones el invertir la suma de $20,000 en aquellas obligaciones que el banco demandado le designaría, a saber: dos pagarés por $10,000 cada uno, vencederos el 30 de junio de 1931, suscrito uno por Baltasar y Heraclio Mendoza y el otro por Baltasar Mendoza, a la orden de dicho banco demandado. Que al aconsejar el banco al demandante dicha inversión, le informó que dichos pagarés constituían una inversión buena y segura por tener conocimiento el banco de la situación económica de Baltasar Mendoza. Que a pesar de dichas representaciones, las cuales eran falsas y fraudulentas, el banco sabía que los referidos pagarés no tenían valor de ninguna clase porque el aludido Baltasar Mendoza era una persona insolvente, teniendo todas las propiedades garantizando otras obligaciones con el demandado Banco de Ponce. Que cuando el banco aconsejó al demandante que hiciera las referidas inversiones y adquiriera la propiedad de dichos pagarés, los cuales fueron satisfechos en dinero efectivo por el demandante, dichos pagarés eran incobrables y no representaban valor alguno. Que el demandante adquirió la propiedad de los referidos pagarés por creer en las representaciones del demandado, que le afirmó que dichos documentos eran perfectamente buenos y solventes; y al aconsejar el banco demandado al demandante en esta forma la adquisición de dichos pagarés lo hizo con el fin de defraudar al demandante en la suma de $20,000, que dichos pagarés representaban, para beneficio del banco demandado, el cual tenía en su cartera esos documentos clasificados como incobrables. Que esta acción del banco demandado ha causado al demandante daños y perjuicios por la suma de $20,000 que pagó por dichos pagarés y el interés correspondiente a dicha suma desde el 20 de febrero de 1931, en que los mencionados pagarés fueron adquiridos, hasta la fecha de la radicación de la demanda.

La demanda estaba intitulada "sobre: cobro de dinero y daños y perjuicios". Se suplicaba se dictara sentencia "condenando al banco demandado a que pague al deman-

dante la suma de $20,000, más sus correspondientes intereses a partir del 20 de febrero de 1931 hasta que se dicte sentencia en este caso, y a pagar además las costas y gastos de este procedimiento''.

El apelante sostiene que la corte de distrito erró:

Al declarar con lugar la excepción de prescripción fundándose en que de la faz de la demanda aparece que la acción ejercitada es la de daños y perjuicios provenientes del delito de falsa representación e impostura definido en el artículo 470 del Código Penal (ed. 1937).

Al declarar que no se ha probado que el banco demandado, actuando por su gerente Pedro Juan Rosaly, indujera al demandante Santiago Iglesias Silva a aceptar los dos pagarés de $10,000 cada uno, cuyo importe representaba el solvento de intereses hecho por el demandante Santiago Iglesias Silva, de una obligación de una tercera persona, con la cual no tenía nexos contractuales de ninguna clase, obligación que el banco le impuso como condición de un préstamo; y que esta aceptación por parte del demandante apelante Santiago Iglesias Silva de la condición impuesta se debió a las falsas y fraudulentas representaciones del demandado y apelado, que le hizo a sabiendas de que dichos pagarés no tenían valor de ninguna clase.

Al declarar que la condición impuesta a Santiago Iglesias Silva para concederle un préstamo de $120,000, de que garantizaría, como en efecto garantizó, la suma de $20,000 que representaba a su vez los intereses de un crédito que el Banco de Ponce tenía en aquella fecha contra Baltasar Mendoza, fué una condición legítima del préstamo, además del pago de los intereses legales convenidos, sin que el banco demandado estuviera obligado a devolver al demandante Santiago Iglesias Silva dicha suma de $20,000.

La única autoridad citada por el apelante en apoyo de su segundo señalamiento es 26 C. J. 1159, sección 72. Admite que para fines de su recurso este señalamiento tiene poca o ninguna importancia. No había duda alguna acerca de la condición impuesta por el banco, mas no hubo falsa representación ni impostura, y la corte de distrito no cometió error al así resolver.

El argumento en apoyo del primer señalamiento es en síntesis el siguiente:

El concepto que determina el artículo 1802 del Código Civil (ed. 1930) requiere como característica esencial que la "culpa o negligencia" no provenga de un acto contractual. 12 Manresa 542, cuarta edición. No se trata de una acción de daños y perjuicios surgida de un cuasi contrato por culpa o negligencia y no son aplicables en modo alguno los términos prescriptivos que la corte aplica. En nuestro sistema de enjuiciar hay gran liberalidad y han desaparecido todos los antiguos tecnicismos. Las alegaciones y la prueba fijan claramente la acción en este caso como una para recobrar el "precio" de un contrato cuya causa es ilegal y viciada de absoluta nulidad. Así debe considerársele dentro de los artículos 122 y 136 del Código de Enjuiciamiento Civil. *Sosa v. Sosa,* 35 D.P.R. 1026; *Irizarry v. Bartolomey,* 32 D.P.R. 924; *Cruz v. Sucn. Kuinlan,* 29 D.P.R. 877; *Oliver v. Oliver,* 23 D.P.R. 181; *Alvarez v. Riera,* 20 D.P.R. 324; y *Otero v. Mirabal,* 37 D.P.R. 730. La demanda en este caso no está redactada con toda la precisión y claridad posibles; pero no es menos cierto que sostenida por la corte sentenciadora, después de la presentación de varias excepciones previas, como buena para determinar una causa de acción, y teniendo en cuenta que la corte inferior autorizó al demandado en innúmeras ocasiones a enmendar su contestación para conformar las alegaciones a la prueba, debe ser apreciada cuidadosamente por este tribunal al aplicar liberalmente los artículos 122 y 136 del Código de Enjuiciamiento Civil vigente. Véanse: *Juncos Central Co. v. Rodríguez,* 16 D.P.R. 302; *Binet v. García,* 18 D.P.R. 338; *Neumann v. Trujillo, et al.,* 24 D.P.R. 304; *Peñagarícano v. Peñagarícano,* 19 D.P.R. 494; *Gandía v. Trías,* 29 D.P.R. 676.

La médula del argumento en apoyo del tercer señalamiento es como sigue:

Es inmaterial a los fines de la causa de acción que se ejercita, el hecho de que Iglesias Silva hubiera o no hubiera investigado la situación financiera del Sr. Mendoza, así como que lo hubiera hecho a moción propia o a petición del banco. Si el banco le impuso como condición del préstamo el pago de esos $20,000 no debidos por él, ni en forma alguna afectos a la transacción, el contrato era nulo por la ilegalidad de la causa, cualesquiera que hubieran sido las gestiones por él realizadas. Véanse: *Baylis v. Lucas,* 98 Eng. Reprint 995; *United States Bank v. Owens,* 27 U. S. 338 (2 Peters 527); 47 Am.

St. Rep. 178 (*sic*), Annotation: "Usury. What Transactions are Usurious"; *New Orleans Canal & Banking Co.* v. *Hagan,* 1 La. Ann. 62; *Bishop* v. *Exchange Bank* (Ga.) 41 S. E. 43; *Janes* v. *Felton,* 129 S. E. 482.

Al terminar el juicio el demandante solicitó de la corte le concediera un término de tres o cuatro días para presentar una demanda enmendada de acuerdo con los resultados de la prueba. El letrado del demandado sugirió que el abogado del demandante debía anunciar en qué forma iba a enmendar, para ver si hay alguna evidencia que justifique esa enmienda. El letrado del demandante replicó que en su opinión la prueba de la defensa no era irreconciliable. Prueba de ello es que el testigo principal suyo lo era el mismo Sr. Rosaly. Lo cuestión era de derecho. Si el banco pudo haber hecho el negocio con Iglesias Silva, el demandante no tiene causa de acción. Si el banco no pudo legalmente haber hecho el negocio que hizo con Iglesias Silva, entonces el contrato es *ultra vires* y el Sr. Iglesias tiene una buena causa de acción. En esas condiciones, la alegación principal del demandante es que la demanda ha sido redactada de acuerdo con la prueba que estuvo a su alcance, no sólo al tiempo de redactarla, sino al tiempo de entrar a juicio oral. Durante el curso del juicio se presentó prueba que determina que el Sr. Berríos, el agente que fué empleado por el demandante para obtener el cobro de los dos documentos en condiciones determinadas, entabló demanda en cuanto a uno de los dos pagarés, sin el "consentimiento, conocimiento y beneficio" del demandante, y dentro de ese pleito hizo determinada transacción que, aunque no benefició al demandante, no pudo perjudicar al banco, puesto que el demandante es responsable de los actos de su agente. Dentro de esas condiciones de la prueba, el demandante desea enmendar su demanda conformándola a la prueba, de manera que su alegación resulte estrictamente la relación de hechos que ha sido probada, esto es, que en tal fecha el demandante solicitó el préstamo; que fué concedido en estas condiciones, y que

sucedió esto y esto—todo de acuerdo con la prueba produ-
cida por demandante y demandado. Entonces la súplica de
la demanda se limitará al pago de $14,000 con los intereses
a partir de la fecha correspondiente en cada uno de los dos
documentos. Eso es lo que sería la demanda enmendada.
El demandante tiene derecho a presentar su demanda enmen-
dada y a que la misma conste en récord, porque si la corte
le negara esa enmienda y la negativa se señalara como error,
ello podría ser motivo de revocación.

El letrado del demandado contestó que el hecho de que
el demandado hubiera probado que uno de los pagarés se
transó, destruye toda la mala fe que se quiere imputar al
banco, coloca al demandante en el plano de mala fe y demues-
tra, sabiendo ellos que los habían endosado y sabiendo que
se había cobrado uno, que no vienen con manos limpias,
conforme ocurría con el demandado. El demandante ha
declarado que tres días antes del juicio él sabía, que ya ellos
sabían de este pleito, sabían que se había transigido. Lo
supo primero su abogado aunque no lo enteró sino tres días
antes del juicio, pero persistieron en hacer una reclamación
de $20,000, no habiendo enmendado nada entonces, y el
demandado sin embargo enmendó su contestación y pagó un
"expreso" para buscar esos documentos para demostrar la
buena fe del demandado y la mala fe de la parte contraria,
para probar, fuera de duda razonable, que esos pagarés fue-
ron endosados a favor de Berríos, quien presentó dos pleitos,
uno que todavía está pendiente en la corte y no aparece
desistido, y otro que se entabló en San Juan y se transigió
en Guayama por $6,000; y eso el demandante no ha podido
desvirtuarlo. Eso le ha venido como una tormenta porque
reclamando $20,000 por haberle vendido el banco dos pagarés
de ciertas condiciones, según ellos, ahora se prueba—no por
su agente, porque el Sr. Berríos que estaba presente y que
no fué traído como testigo, no era su agente—que esos paga-
rés fueron endosados por valor recibido, y la escritura pre-
sentada en evidencia, complementada con la declaración del

Sr. Fernández García, demuestra que la hipoteca fué hecha a favor de Berríos. ¿Por qué si se endosan esos pagarés a nombre de Berríos por pura amistad, al transarse, no se hizo la hipoteca a favor del Sr. Iglesias? No traen la declaración de Berríos porque es comprometedora. No quieren aparecer reclamando $20,000 y alegar fraude, cuando se prueba que ellos cobraron $6,000 en una transacción. Ellos no tratan de conformar las alegaciones a la prueba suya. Tienen un caso malo. No hay razón para una nueva demanda. Si el demandante tiene razón, la corte se la dará en cuanto a $14,000 ó $10,000, o lo que sea, pero el Banco de Ponce ha probado su buena fe con una prueba que no es deleznable. La prueba del demandante tiende a demostrar mala fe por parte del banco; que se le entregaron los pagarés contra un dudor insolvente, sabiendo que eran incobrables; que el banco le sacó del bolsillo a Iglesias Silva $20,000. La contención y la prueba del demandado demuestran que no es así y también que el Sr. Iglesias Silva había endosado esos pagarés a Berríos por valor recibido y que uno de ellos fué transado por $6,000. Las teorías de una y otra parte son contradictorias; la prueba es diferente. Y por eso el demandado se opone a que se dé término o se autorice enmienda alguna a la demanda.

El letrado del demandante insistió en que la corte no tiene derecho a impedirles, ni la parte contraria a oponerse, a que el demandante presente una demanda para acomodar las alegaciones a la prueba. Después de presentarse la demanda, la corte *motu proprio,* o por oposición de la parte contraria, puede no admitir la enmienda, pero el derecho a presentarla no es posible negarlo. Las alegaciones que se enmienden al terminarse el juicio para acomodarlas a la prueba se enmiendan por haber entrado un elemento de prueba en el procedimiento que era ajeno al conocimiento del demandante en el momento de redactar su demanda y que de alguna manera altera, modifica, disminuye o reduce el derecho solicitado. Ésa es la posición jurídica del demandante. El demandante

no alega que el Banco de Ponce tenga mala fe; lo único que alega es que el banco, creyendo que podía hacer un negocio, lo hizo, y por consiguiente hay un cobro de lo indebido y debe resarcirse al demandante. Aquí no hay mala fe ninguna. El letrado del demandante no está argumentando el pleito en el fondo; no está poniendo en contradicción la evidencia del demandante y la del demandado. Está pidiendo derecho o permiso a hacer lo que ha anunciado desea hacer.

El resto de este incidente, tal cual consta en la transcripción taquigráfica, fué así:

"Lcdo. Coll Cuchí: Poniéndome yo a enmendar la alegación, por ejemplo, sin que le diga a la corte que esto sea definitivo—así de primera intención....—El hecho séptimo de la demanda dice: 'Y alega también el demandante que adquirió la propiedad de dichos pagarés por creer en las representaciones del demandado que le afirmó que dichos documentos eran perfectamente buenos y solventes; y al aconsejar el banco demandado al demandante en esta forma la adquisición de dichos pagarés lo hizo con el fin de defraudar al demandante de la suma de VEINTE MIL DÓLARES que dichos pagarés representaban, para beneficio del banco demandado, el cual tenía en su cartera esos documentos clasificados como incobrables.' De acuerdo con la prueba...

"Juez: ¿Cómo sería la enmienda?

"Lcdo. Coll Cuchí: Permítame la corte...Sígame la corte y si no me hago claro, interrúmpame, para hacerme claro.

"De acuerdo con la prueba, estos pagarés fueron entregados por Iglesias Silva a Antonio Berríos; pero de acuerdo con la prueba y con una carta que estaba en poder del demandante, que es lo que nosotros sabíamos, Antonio Berríos Berdecía devolvió de esos documentos al demandante uno y le dijo que el otro estaba en poder de Fernández García. Ése era el conocimiento nuestro, y siendo eso así, nosotros no teníamos que alegar para nada nuestra transacción con Antonio Berríos porque había quedado ineficaz. Pero de la prueba resulta que con respecto al documento a que se refiere la carta que estaba en poder de Fernández García (1934), fué entablado un pleito por Antonio Berríos Berdecía en la Corte de Distrito de Guayama que terminó en una transacción en que no es parte Santiago Iglesias Silva y el desconocimiento de Iglesias Silva de eso era absoluto.

"Y ahí, para conformar la alegación a la prueba, nosotros podríamos añadir: 'Octavo: Que estos dos documentos a que se refiere la demanda fueron gestionados su cobro por diferentes maneras, entre otras, haciendo la cesión, sin valor de ninguna clase, al señor Fulano de Tal para que los cobrara, el cual los devolvió en tal fecha sin haber efectuado ese cobro, pero siendo una realidad que el documento a que se refiere la carta en poder de Fernández García fué entendido transigido en el pleito tal, por el cual recibió Berríos Berdecía la suma de seis mil dólares, aunque sí con completo desconocimiento del demandante.'

"Eso es lo que se llamaría acomodar la alegación a la prueba. Porque, ¿cuál es la teoría? No es que yo quiera enseñar ni dar lecciones a nadie. La teoría de enmendar una demanda para hacerla conforme con la prueba nunca puede pasar de la sentencia que pueda dictar una corte por las alegaciones existentes. Es una cuestión de purificar y clarificar el procedimiento. Sin yo hacer esa alegación en la demanda, la corte puede dictar sentencia tal como si yo la hiciera, porque nunca el juez está obligado a dictar sentencia de acuerdo con la súplica de la demanda porque lo único que no forma parte de la demanda es la súplica que se hace, que en nuestro procedimiento que tenemos hoy en Puerto Rico nosotros la hemos españolizado. S. Sa. verá que una demanda presentada en cualquier corte de Puerto Rico donde rige nuestro Código de Enjuiciamiento Civil, después de expuestos los hechos, termina: 'Wherefore, judgment is pleaded' etc. Verá como eso es universal, en los Estados Unidos...la súplica en inglés 'Wherefore, judgment is pleaded' etc. nosotros la hemos españolizado y pedimos que se haga tal cosa, y pedimos tal cosa y pedimos todo lo que se quiere hacer. Pero la súplica no forma parte de la demanda, así como las razones de una sentencia no forman parte de la sentencia ni obran contra la sentencia. Deseamos presentar la demanda enmendada para purificar los procedimientos, que al enmendar la demanda para ajustarla a la prueba ya tenemos presentado ante el tribunal el *issue* de una manera clara.

"Juez: ¿Sería necesaria esa enmienda a la demanda?

"Lcdo. Coll Cuchí: No.

"Lcdo. Zayas Pizarro: Pues...

"Lcdo. Coll Cuchí: No diga pues...

"Lcdo. Zayas Pizarro: Me pregunta a mí.

"Juez: Al señor Coll.

"Lcdo. Coll Cuchí: Si fuera necesario, no sería propia. Solamente son admisibles enmiendas a la demanda para ajustar alega-

ciones a la prueba cuando no pueden alterar el procedimiento. En una sentencia la corte puede hacer eso que yo estoy pidiendo sin enmendarse la demanda. Pero nosotros pedimos enmendar la demanda para conformarla a la prueba a fin de que la sentencia corresponda a las alegaciones, si tenemos razón; y si no, que se declare sin lugar. Siempre que se solicita enmendar una demanda para ajustarla a la prueba presentada es requisito indispensable que la corte pueda dictar una sentencia sin necesidad de que se enmiende la demanda. Esto es una cuestión formularia, esto es una cuestión de récord.

"Lcdo. Zayas Pizarro: ¿Ya podemos hablar?

"Juez: Ahora, sí.

"Lcdo. Zayas Pizarro. Si es formularia...

"Juez: Tiene la palabra el señor Zayas Pizarro.

"Lcdo. Zayas Pizarro: Si es cuestión formularia y cuestión de récord, ¿por qué entonces plantear esta cuestión, por qué no esperar hasta el último momento que se le conceda eso a que cree tiene derecho sin plantearla? Si podemos obviar eso, si S. Sa. tiene derecho a dictar una sentencia en esa forma sin esa enmienda, ¿qué interés tiene el Sr. Coll, a nombre del demandante, en enmendar la demanda, cuando S. Sa. le puede dar lo mismo sin necesidad de enmendar? Un hombre muy elocuente es el Sr. Coll. Yo no soy orador. Él lo dijo. Pero entiendo que hay hombres como el Sr. Coll y Cuchí que ya por mi experiencia los entiendo muy bien. Ahora dice que quiere enmendar la demanda diciendo que esos pagarés que Iglesias Silva le endosó a Antonio Berríos fueron sin valor de ninguna clase, esto es, que no medió consideración. Y, sin embargo, los dos pagarés dicen que fué por valor recibido. Y la presunción es que hubo causa y consideración. ¿Por qué, estando aquí el señor Berríos, no lo han traído como testigo y no ha venido a declarar? La presunción es que hubiera declarado contra ellos. La presunción es que esos pagarés fueron endosados por causa y consideración, y la declaración del señor Iglesias Silva no es suficiente para destruir la presunción de valor recibido. La parte contraria quiere enmendar su demanda para eliminar algo que le molesta en la prueba porque no vaya a ser que la corte declare sin lugar la demanda, y ellos quieren salirse de ese marco y caer dentro de otro marco. Además, él ha admitido que se puede dictar la sentencia que él desee sin necesidad de esa enmienda. Por esas razones, yo pido que no se dé término ni autorización alguna para hacer la enmienda.

"Juez: La corte resuelve no admitir las enmiendas; cree que puede resolver el caso sin necesidad de enmendarse la demanda, de admitirse la demanda enmendada, de acuerdo con lo que resulte de la evidencia de ambas partes.

"Entonces, para argumentos, ¿qué términos desean? ¿Cómo se va a hacer?

"Ledo. Coll Cuchí: Yo le pido a la corte que acomode al compañero en eso.

"Ledo. Zayas Pizarro: Como el compañero es el que demanda, puede tomarse hasta el 5 de mayo.

"Juez: ¿Lo someten por alegatos?

"Ledo. Coll Cuchí: Sí, señor.

"Juez: ¿Qué términos necesitan?

"Ledo. Coll Cuchí: Hasta el 5 de mayo. ¿El taquígrafo me quiere leer mis últimas manifestaciones?

"(El taquígrafo da lectura a las manifestaciones del Sr. Coll que aparecen a la página 337, y a la resolución de la corte que aparece a la página 339.)

"Ledo. Coll Cuchí: Yo tengo entendido...

"Juez: Voy a repetir ahora mi resolución para que quede más clara. La corte declara sin lugar la moción del demandante para que se permita presentar una demanda enmendada para conformar sus alegaciones con la prueba presentada en el caso por entender la corte que sin la presentación de esa demanda enmendada puede resolver el caso, estudiar la evidencia presentada por ambas partes y dictar una sentencia. Ahora está completa. Esa última es la manifestación deliberada de la corte.

"Ledo. Coll Cuchí: Así, nosotros aceptamos la resolución."

Unas seis semanas más tarde y después del demandante haber radicado su alegato, el demandado solicitó la reapertura del caso y permiso para enmendar su contestación agregándole—en adición a la defensa especial de que la acción estaba prescrita a tenor del artículo 1868 del Código Civil—la referencia a la sección 5 de la "Ley sobre fijación del interés en toda clase de obligaciones", según fué enmendada en 1903 y 1907 (Estatutos Revisados de 1911, sección 4176) y una alegación al efecto de que cualquier reclamación sobre devolución de dinero, de acuerdo con dicha ley, estaba prescrita por no haberse instruído la acción dentro del año con-

tado a partir de la fecha en que se hizo el pago. De esta moción se desprende que la excepción previa, declarada siu lugar por la corte antes de radicar el demandado su contestación, se basó, entre otros, en el fundamento de que la demanda no aducía una causa de acción de rescisión, toda vez que en ella no se alegaba el tipo de interés que se pagaría sobre el préstamo ni el tiempo por el cual se habían pagado los intereses, de tal suerte que, en caso de que los $20,000 se consideraran como intereses adicionales, la cuantía eu exceso del tipo máximo estatutario—que en aquel entonces era el 12%—pudiera ser determinado. El juez de distrito no adujo los motivos que tuvo para declarar sin lugar la excepción previa, mas no es probable que la misma hubiera sido desestimada, de haber insistido el demandante para aquel entonces en la teoría de un contrato usurario. Tampoco es probable que—de haberse declarado con lugar la excepción y de haber el demandante enmendado su demanda en tal forma que adujera una causa de acción en cobro de intereses pagados bajo un contrato usurario—el demandado no hubiera presentado objeción alguna, bien mediante excepción previa, o a través de una defensa especial, al efecto de que esta nueva causa de acción estaba prescrita de conformidad con el artículo 5 de la ley de 1902.

La teoría de la moción del demandado para que se reabriera el caso y se le permitiera enmendar la contestación fué que el demandante en su alegato trataba de convertir una acción de daños y perjuicios en una de restitución de dinero cobrado como intereses en exceso del tipo permitido por la ley.

Al oponerse a esta moción el demandante insistió en que:

El término de un año para entablar una acción con el fin de recobrar intereses en exceso del tipo legal se aplica solamente cuando dicho exceso se ha cobrado como tal interés. Éste no es el caso, ni dentro de la teoría del demandante ni dentro de la teoría del demandado. Ahora se trata solamente de anular un contrato independiente del contrato de préstamo, por virtud del cual no se cobran intereses

excesivos, sino que, aduciendo como su causa, el contrato de préstamo, se le impuso al demandante como condición suscribir el nuevo contrato; esto es, en el contrato para el pago de los· intereses que adeudaba Mendoza no existió otra causa al mismo que el contrato de préstamo a favor del demandante. Ésta es una cuestión ilícita. La acción está claramente dentro de la prescripción de cuatro años asignada por el Código Civil para pedir la nulidad de los contratos. *Sosa* v. *Sosa*, 35 D.P.R. 1026; *Irizarry et al.* v. *Bartolomey et al.*, 32 D.P.R. 924; *Cruz* v. *Kuinlan*, 29 D.P.R. 877; *Oliver et al.* v. *Oliver*, 23 D.P.R. 181; *Sucn. de Suro* v. *Sucn. de Prado*, 21 D.P.R. 241; *Sucn. Criado* v. *Martínez et al.*, 25 D.P.R. 334; *Alvarez* v. *Riera*, 20 D.P.R. 324.

El de *New Orleans Canal & Banking Co.* v. *Hagan*, supra, es típico de los casos en que ahora descansa el apelante. Del sumario del mismo tomamos el siguiente párrafo:

"De un banco cuya carta constitutiva le prohibía cargar intereses en exceso de cierto tipo sobre cualesquiera préstamo que hiciera, el demandado obtuvo un préstamo a condición de que otorgara una hipoteca sobre ciertos bienes para garantizar su pago, al tipo de interés más alto que la carta constitutiva del banco le permitía, y a condición de que otorgara una segunda hipoteca, sobre la misma propiedad, para garantizar la deuda de un tercero con el banco. *Se resolvió*, que al exigir la segunda hipoteca, el banco estipuló algo en exceso del pago del tipo más alto de intereses autorizado por su carta constitutiva, que la estipulación era usuraria e ilegal, y que la hipoteca para garantizar la deuda del tercero no era exigible."

En su alegato el apelante insiste en que ese caso es idéntico al presente y en que procede de Louisiana, donde por espacio de más de cien años la ley ha sido igual a la de Puerto Rico. Sin embargo, no nos cita ningún caso de Louisiana, de España, ni de ninguna otra jurisdicción de derecho civil, para demostrar que el exigir se garantice la obligación de un tercero como requisito previo a la concesión de un préstamo, sea contrario "a las leyes o a la moral" bajo un estatuto similar al precepto contenido en el artículo 1227 de nuestro Código Civil (edición 1930) en un caso en que tal requisito no está viciado de usura.

Si la acción era una basada en un acto torticero—como claramente lo era—creemos que hasta el momento del juicio y de presentarse la moción solicitando permiso para enmendar la demanda ajustándola a la prueba aducida en el juicio, ella había prescrito de conformidad con el artículo 1868 del Código Civil.

Si la acción era—tal como indican el tercer señalamiento y las autoridades citadas en apoyo del mismo—una para recobrar intereses exigidos y pagados en exceso del tipo permitido por la ley, ella debe regirse por las disposiciones de la ley de 1902, supra, tal cual fué enmendada en 1903 y 1907, y había prescrito a tenor de la sección 5 de la referida ley.

Sea ello como fuere, no hubo fraude, dolo, falsa representación o impostura por parte del banco, y no es menester que especulemos sobre la posibilidad de obtener sentencia a base de una teoría que no está sostenida por los hechos que están ante nos.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. De Jesús no intervino.