María Josefa, María Gil y María Modesta González, etc., demandantes y apelantes, *v.* Sucn. de Ramón Díaz Román y de su esposa Manuela Mass Colón, etc., demandados y apelados; Jacobo Reboyras Román, interventor.

Núm. 9566.—*Sometido:* Febrero 12, 1949.  *Resuelto:* Marzo 11, 1949.

644

*Eduardo Pérez Casalduc,* abogado de los apelantes; *A. Reyes Delgado, Diego E. Ramos* y *P. Santos Borges,* abogados de los apelados.

EL JUEZ ASOCIADO SR. TODD, JR. emitió la opinión del tribunal.

En la demanda enmendada radicada ante la Corte de Distrito de Arecibo se alega, como primera causa de acción, que los demandantes son dueños de varios condominios proindiviso, que representan en conjunto cinco octavas partes de dos fincas rústicas; que ambas fincas fueron con anterioridad, propiedad en común y proindiviso de los hermanos Isidra, Felipa, Ramona, Magdalena, Modesta, María Gil, Josefa y Carlino González; que en el año 1920, los condueños Magdalena, Modesta y Carlino González vendieron sus respectivos condominios a Ramón Díaz Román, causante de los demandados, quedando entonces éste como dueño de tres octavas partes y los otros como dueños de cinco octavas partes de las dos fincas; que Isidra, Felipa y Ramona, dueñas cada una de un condominio de una octava parte en ambas fincas, fallecieron intestadas, pasando sus condominios a sus respectivos herederos aquí demandantes.

Continúa alegando la demanda, que después de haber adquirido los condominios que le fueron vendidos por los tres hermanos González, Ramón Díaz Román, el causante de los demandados, manifestó a los otros condueños, quienes vivían en una de las dos fincas, que él se haría cargo del pago de las contribuciones y luego cobraría su parte a cada condueño deduciéndola del valor de los productos de las fincas, a ser liquidados por él; que maliciosamente y con el propósito de hacerse dueño de la totalidad de las fincas, el mencionado

Díaz Román, no obstante tener fondos suficientes para poder satisfacer las contribuciones, dejó de pagarlas, dando lugar a que las fincas, que estaban tasadas en $7,000, fuesen vendidas en subasta pública en cobro de contribuciones por la suma de $102.18; que las fincas fueron adjudicadas en diciembre 5 de 1922 a Alberto Sureda por $415, quien las vendió a Ramón Reboyras Román, hermano materno de Ramón Díaz Román, por escritura de febrero 14 de 1924; y que en marzo 31 de 1928 Reboyras vendió las dos fincas a su hermano Ramón Díaz Román, causante de los demandados. Alegan los demandantes que ellos no tuvieron conocimiento de la venta de sus condominios hasta que Díaz Román les informó que él había adquirido las fincas del comprador en la subasta; que Díaz Román les dijo que él no había podido satisfacer las contribuciones por no ser suficientes los productos de las fincas y que para salvar sus condominios él había decidido adquirirlas para sí; que Sureda compró las fincas con dinero que le suministró Díaz Román y actuado como mandatario y para beneficio de éste; que Sureda traspasó las fincas al hermano de Díaz Román, obedeciendo órdenes de éste y sin que mediara en esa venta precio ni consideración de clase alguna; que Díaz Román adquirió las fincas de Reboyras sin mediar precio ni ninguna otra consideración; que tanto la adquisición por Sureda como los traspasos subsiguientes fueron fraudulentos y realizados por el causante de los demandados con el propósito de privar a los demandantes de sus condominios, siendo prueba de ello el hecho de que a pesar de haber sido vendidas las fincas en su totalidad, Sureda inscribió solamente la adquisición de los condominios de los demandantes, sin que se hiciera inscripción alguna en cuanto a los condominios de Díaz Román. Alegan por último los demandantes, que la subasta de sus condominios es nula por no haber sido ellos notificados del embargo, ni tampoco de la subasta, por el Colector de Rentas Internas de Utuado.

Por la segunda causa de acción se reclama la suma de $60,000 como valor de los frutos producidos por las fincas o que éstas hubieran podido producir desde el año 1924 hasta la fecha de la demanda.

Contestaron los demandados negando específicamente las alegaciones esenciales de la demanda y alegando como "excepciones previas": (a) que la demanda no aduce hechos suficientes para constituir causa de acción; y (b) que la primera causa de acción está prescrita de acuerdo con el artículo 1253 del Código Civil (ed. 1930) y la segunda de acuerdo con el artículo 1855 del mismo Código.

Como defensas especiales, alegaron los demandados:

(a) Que los demandados, su causante y sus antecesores en título han poseído las fincas, con justo título y buena fe, en concepto de dueños, pública, pacífica y continuamente, por más de diez años, estando en Puerto Rico durante ese período todas las partes interesadas.

(b) Que la acción para pedir la nulidad del embargo y de la subasta está prescrita por haber transcurrido más de 15 años desde la fecha en que pudo ser ejercitada.

(c) Que las demandantes Josefa y Modesta González ratificaron todo lo actuado al comparecer ante el Departamento de Hacienda a solicitar la parte que le correspondía del producto de la venta en pública subasta, recibiendo el cheque correspondiente; y que otro tanto hicieron los demandantes Baldomero y Saturnina Vera González, herederos de Isidra González.

(d) Que todos los demás demandantes están impedidos de reclamar contra los demandados porque todos ellos a virtud de su conducta y actos han reconocido la validez de los procedimientos por virtud de los cuales los demandados han venido a ser dueños de las dos fincas.

(e) Que el causante de los demandados era un tercero, por haber adquirido de quien en el Registro de la Propiedad

aparecía como dueño, sin que tuviera conocimiento de vicio o falla en el derecho de aquél de quien él adquirió.

Previo permiso concedídole por la corte intervino y fué sustituído como demandado Jacobo Reboyras Román, quien radicó una contestación redactada en los mismos términos que la presentada por los demás demandados.

Los demandantes han apelado de la sentencia que declaró sin lugar la demanda en cuanto a las dos causas de acción, con imposición de costas a los demandantes. Basan su recurso en cinco señalamientos de error, uno de los cuales es al efecto de que ''erró la corte inferior al negarse a decretar la nulidad de la venta en pública subasta para el cobro de contribuciones de los condominios pertenecientes a (María) Josefa, (María) Gil, (María) Isidra, (María) Felipa y (María) Ramona González Colón, luego de haberse probado que en la notificación del embargo no se cumplió con lo previsto en el artículo 342 del Código Político, en relación con el 336 . . . ''

La prueba no contradicha demostró que la finca objeto de litigio perteneció a Tomás Aquino González y estaba inscrita a su nombre en el Registro de la Propiedad; que él falleció en el año 1919, bajo testamento otorgado en 1918; que en la partición de sus bienes se adjudicó dicha finca a sus ocho hijos naturales reconocidos, antes mencionados, en común proindiviso; que la finca aparecía inscrita en el Registro de la Propiedad a nombre de la Sucesión Tomás Aquino González y en igual forma estuvo tasada, a nombre de la sucesión, para el pago de las contribuciones sobre la propiedad, y que las correspondientes al año 1921-1922 no fueron satisfechas, habiendo procedido el Colector de Rentas Internas a embargar, como embargó, dicha finca, como de la propiedad de la Sucesión de Tomás Aquino González, notificando únicamente de dicho embargo a Baleriana González, como familiar, sin que se notificara a ninguno de los demás condueños; que el Colector procedió a vender en pública subasta dicha finca a la cual comparecieron e hicieron

ofertas Ramón Díaz Román y Alberto Sureda, habiéndole sido adjudicada a este último por ser el mejor postor y a quien el Colector expidió el Certificado de Venta, el cual fué inscrito en el Registro de la Propiedad en cuanto a los condominios pertenecientes a cinco de los condueños González, toda vez que los otros tres ya habían vendido los suyos, con anterioridad al embargo y a la subasta, a Ramón Díaz Román, quien los tenía ya inscritos a su favor; que el certificado de venta fué notificado por el Colector a siete de los condueños de la finca de apellido González Colón, incluyendo a Magdalena y Modesta que ya habían vendido a Ramón Díaz Román y aun a María Sixta, otra hija de Tomás Aquino González, que había fallecido antes que su padre (sic); que en el año 1924, transcurrido el año que para redimir la propiedad tenían sus dueños, Sureda vendió los cinco condominios a Ramón Reboyras (hermano de Ramón Díaz Román), quien los inscribió a su favor y los vendió en el año 1928 al propio Ramón Díaz Román, pasando éste a ser dueño de la totalidad de la finca, la cual venta también fué inscrita en el registro. Se probó, además, que el condominio perteneciente a la demandante María Gil González había sido vendido por ella a Antonio García Medero, por escritura otorgada ante el Notario Francisco Acevedo el 18 de septiembre de 1920, aunque esta venta nunca fué inscrita en el Registro de la Propiedad.

■ Los artículos 342 y 336 del Código Político, según regían en 1922, en lo pertinente, disponen que:

"Artículo 342.—Al recibo de dicha orden y certificado, el colector o agente dará aviso al dueño de dicha propiedad en la forma que determina el artículo 336. . ."

"Artículo 336.—Inmediatamente después del recibo del consentimiento escrito del Tesorero, el colector o agente dictará una notificación escrita de embargo de la propiedad mueble del contribuyente moroso; notificación que expresará el total de las contribuciones vencidas y no satisfechas y el recargo señalado por el Artículo 330. Dicho embargo será ejecutivo tan pronto como se haya notificado

de él, haciendo la entrega de una copia de la notificación a algún miembro de la familia, o dependiente mayor de edad; una constancia de dicha entrega se registrará por el colector o agente para ulterior efecto. Cuando el colector o agente no encuentren a ningún miembro de la familia o dependiente del deudor, llamará a dos vecinos como testigos de la entrega de dicha notificación de embargo, y dejará dicha notificación en poder de los testigos citados. . .''

El artículo 347 del Código Político dispone que el Colector preparará, firmará y entregará al comprador un certificado de compra y que:

''. . . Dicho certificado será evidencia prima facie de los hechos relatados en el mismo en cualquier controversia, procedimiento o pleito, que envuelva o concierna a los derechos del comprador, sus herederos o cesionarios, a la propiedad traspasada en virtud del mismo; y el comprador, sus herederos o cesionarios, pueden, al recibo de dicho certificado, hacer que sea debidamente inscrito por el registrador de la propiedad del distrito en que radicare dicha propiedad mediante el pago de dos dólares como honorarios.''

Evidencia prima facie es la que basta para probar un hecho determinado, mientras no se contradiga o desvirtúe con otra evidencia, dispone el artículo 373 del Código de Enjuiciamiento Civil.

La notificación de embargo en este caso estaba dirigida a la Sucn. de Tomás Aquino González, y fué notificada única y exclusivamente a Baleriana González, como familiar, en 28 de septiembre de 1922. Se probó que Baleriana González y María Isidra González son una misma persona, o sea, la dueña de uno de los condominios en la finca objeto de este pleito. ¿Se cumplió con lo prescrito en el artículo 336, supra, al hacer la notificación de embargo? A nuestro juicio, no. Para que una notificación de esta naturaleza surta efecto legal tiene que hacerse a todos los dueños del inmueble, siempre que sea posible. La notificación a uno solo de los condueños es insuficiente de acuerdo con la ley y la jurisprudencia establecida por este Tribunal en el caso de *González et al.* v. *Pirazzi et al.*, 23 D.P.R. 399. En

el caso de *González* se resolvió que cuando son varios los dueños de una propiedad, cada uno de ellos tiene derecho a una notificación cualquiera que sea su naturaleza y dijimos a la pág. 406, que:

"Ese artículo se refiere continuamente al 'deudor.' El artículo 392 del Código Político determina que el número singular incluye al plural. En la fecha del embargo y de la venta los verdaderos dueños de la finca con derecho inscrito eran no solamente Natalio González sino también los apelantes, y todos tenían derecho a la notificación según las disposiciones del Código Político como de la ley en general. Véase el caso de *Menéndez* v. *El Registrador de la Propiedad*, 13 D.P.R. 191; 37 Cyc. 1325, nota 15; Cooley, sobre Contribuciones (3ª. Ed.), pág. 733; *Weinreich* v. *Hensley*, 121 Cal. 647–659; *Turpin* v. *Lemon*, 187 U.S. 57. En este caso los dueños de la finca no fueron notificados sino solamente uno de ellos. No importa que el artículo 336, supra, exprese que la notificación debe hacerse a un miembro de la familia. La familia a que se refiere dicho artículo se supone de antemano que es la familia que vive en el lugar. Un primo no es un miembro de la familia de los primos, condueños que viven separados. Creemos que este razonamiento se desprende del mismo artículo 336 y de otros artículos del Código Político. La teoría correcta es que la notificación debe hacerse a los dueños, a sus familiares si éstos se encuentran en el sitio, o se dejará en poder de los testigos cuando no pueden hallarse todos los dueños. La corte nada tiene que ver con los inconvenientes que pueda ocasionar la interpretación que demos al estatuto cuando son varios los dueños. Queda el hecho de que cada dueño tiene derecho a una notificación cualquiera que fuese su naturaleza y en este caso los apelantes no fueron notificados en absoluto. Aparece además el hecho de que en la fecha en que se hizo una de las tasaciones y de la venta la finca estaba inscrita en el registro a nombre de los apelantes; por tanto, es evidente que el Colector no hizo la debida investigación.

"Tenemos, pues, que llegar a la conclusión de que para la venta de la finca cuyo condominio reclaman los demandantes a los demandados no se siguió por la administración el debido procedimiento y que en su consecuencia dicha venta es nula en cuanto afecta a aquel condominio, siendo también nulos los traspasos sucesivos a Nereo Pirazzi y Zoila Lugo en la parte que a tal condominio se refiere."

Ratificamos esta doctrina en el caso de *Nieves* v. *Registrador,* 67 D.P.R. 1, 6, y resolvimos además, que:

"La notificación de la venta, hecha por el Colector a la sucesión dueña del inmueble, en nada puede cambiar la situación creada por la falta de notificación del embargo. El artículo 315 del Código Político dispone que en todos los casos en que se embarguen y vendan bienes raíces para el pago de contribuciones, el Tesorero 'notificará la inscripción de dicha venta a todas las personas que tuvieren una hipoteca o gravamen sobre dicha propiedad, consignando en la notificación la fecha de la venta, la suma en que se hubiere vendido la propiedad y los demás datos que estimare oportunos.' El propósito de dicha notificación a los acreedores hipotecarios o dueños de gravámenes es poner a éstos en conocimiento de lo ocurrido para que puedan hacer uso del derecho de redención que les concede el artículo 348 del mismo Código. El artículo 315 no impone al Tesorero la obligación de notificar la venta al dueño de la finca vendida en pública subasta; y es obvio que así sea, pues debe presumirse que el contribuyente cuya propiedad ha de venderse en pública subasta ha sido suficientemente informado si y cuando el Colector cumple con los requisitos de los artículos 342 y 343 del Código Político. La falta de notificación del embargo no quedó suplida o subsanada por la notificación de la venta. El embargo de propiedades para el cobro de contribuciones no será ejecutivo mientras no haya sido notificado en la forma prescrita por los artículos 336 y 342 del Código Político."

El colector que dictó y diligenció la notificación en el presente caso tenía o debió tener conocimiento del hecho de que había varios condueños, pues dirigió dicha notificación a la Sucn. de Tomás Aquino González. Siendo ello así, debió haber notificado a todos los miembros de dicha sucesión que no habían vendido sus condominios. Ni siquiera se notificó a Ramón Díaz Román, causante de los aquí demandados, que para esa fecha era dueño de tres condominios en la finca, vendidos a él por tres de los herederos de Aquino González en 1920. Que a pesar de no haber sido notificado del embargo, Ramón Díaz Román tuvo conocimiento de la subasta, lo demuestra el hecho de que fué uno de los que compareció a la misma e hizo una oferta de $400 por la finca y,

en cuanto a sus condominios se refiere, desde luego, no hubiera podido alegar con éxito que no fué notificado del embargo para luego atacar de nulidad lo actuado. Los demandantes no están en esa situación. Ellos o sus causantes, con excepción de María Isidra (Baleriana), nunca fueron notificados del embargo de la finca. La notificación de la venta, ya realizada, no subsanó la falta de jurisdicción del Colector para proceder a la venta del inmueble en pública subasta. Podemos comparar la venta hecha por el Colector de Rentas Internas, a una venta judicial ordenada por una corte y en esta última situación hemos resuelto, en el caso de *Oliver et al.* v. *Oliver*, 23 D.P.R. 181, 190, que:

". . . Considerando la venta judicial como un contrato en el que la corte o su representante oficial debidamente autorizado sustituye al verdadero vendedor cuyo 'consentimiento' lo da la corte por una ficción legal paradógica, la corte, sin embargo, tiene que tener jurisdicción por lo menos de la materia en controversia, y ordinariamente sobre la persona del demandado. Las cortes son organismos creados por la ley y la facultad para considerar y resolver la materia objeto de la controversia es la definición ordinaria y ciertamente la esencia misma de la jurisdicción. Y si la ley exige que se notifique personalmente el emplazamiento al demandado, o en forma equivalente, como requisito previo indispensable para el ejercicio de dicha jurisdicción, entonces la corte, si no existe tal notificación previa, carece enteramente de facultad para dar tal consentimiento, como ocurriría en el caso de cualquier individuo particular que no estuviera autorizado."

En la venta judicial es la corte la que da el consentimiento para la venta. En la venta en pública subasta por falta de pago de contribuciones es el Colector, como agente del Tesorero de Puerto Rico, el que da ese consentimiento. Si la corte actúa sin jurisdicción al faltar el emplazamiento, en la misma forma actúa el Colector al no notificar el embargo, que constituye el aviso para la venta en pública subasta, pues en él se fija la fecha para dicha venta.

". . . La notificación de la venta, según lo requiere el estatuto, es necesaria para autorizar una venta por contribuciones y la ausen-

cia de tal notificación hace que la venta sea nula. Ésta es una de las más importantes salvaguardias que se han estimado necesarias para proteger los intereses de contribuyentes, y nada puede ser substituído por la misma o excusar el no haberla dado.'' 3 Cooley, *Taxation*, 2791, sec. 1409 (4ª. Ed.) y casos citados en las notas.

Y el mismo autor dice, a la pág. 2793, sec. 1410:

''Si el estatuto requiere una notificación personal, ninguna otra forma puede ser substituída, y la notificación debe cumplir completamente con los requisitos del estatuto en cuanto a la persona a ser notificada, etc. Si dos o más personas son condueñas, y el estatuto requiere notificación a los dueños, todos tienen que ser notificados y una venta hecha bajo una notificación a uno solo de ellos es nula.'' Véase anotación en 54 A.L.R. 756, 757–8.

Erró, por tanto, la corte inferior al no resolver que la venta en pública subasta fué nula en tanto en cuanto afectaba a aquellos condominios de aquellos demandantes que no fueron notificados del embargo de las fincas. Es decir, María Isidra (Baleriana) fué notificada y en cuanto a ella y a sus causahabientes la venta fué válida; María Modesta, María Magdalena, Carlino y María Gil habían vendido sus condominios desde el año 1920 y, por tanto, no tenían que ser notificados, y en cuanto a ellos y sus causahabientes la venta fué válida también. Quedan únicamente por tanto, afectados por dicha nulidad, los condominios vendidos en pública subasta pertenecientes a la demandante María Josefa y los causahabientes de María Ramona y María Felipa.

Arguyen los demandados sin embargo, que la acción de nulidad en este caso está prescrita por haber transcurrido más de quince años desde la fecha en que pudo haber sido ejercitada. No tienen razón.

En el caso de *Oliver et al.* v. *Oliver,* supra, se aceptó que ''una venta judicial es un contrato.'' También puede aceptarse que lo es una venta pública por falta de pago de contribuciones. Siendo nula la venta por no haber existido el consentimiento de una de las partes que nunca fué notifi-

cada de la venta, no hubo contrato. Como dijimos en dicho caso:

". . .No hay nada por 'anularse,' dentro del significado del artículo 1267, nada en que pueda fundarse 'la acción de nulidad' a que se refiere el artículo 1268. De aquí se infiere que la prescripción alegada no constituye defensa alguna en una acción reivindicatoria de bienes inmuebles así vendidos."(1)

Establecida la nulidad absoluta, la inexistencia de la venta en tanto en cuanto afectaba a los condueños que no fueron notificados del embargo, tampoco prescribía la acción a los quince años. Como dijimos en *Sucn. Trías* v. *Porto Rico Leaf Tobacco Co.,* 50 D.P.R. 91, 95:

"Una acción encaminada a establecer la nulidad absoluta de un procedimiento ejecutivo sumario no prescribe por el transcurso de 15 años por las mismas razones que justifican la conclusión de que tal acción no prescribe por el transcurso de cuatro años. (Citas.)"

Siendo el caso uno de inexistencia, no cabe la prescripción. *González Rodríguez* v. *Fumero,* 38 D.P.R 556; *Boscio* v. *Vilá,* 67 D.P.R. 604. La misma doctrina rige en los Estados Unidos. 4 Cooley, *Taxation,* 2970, sec. 1510 *et seq.*; *Horsky* v. *McKennan,* 162 P. 376; *Redfield* v. *Parks,* 132 U. S. 239; *Moore* v. *Brown et al.,* 52 U. S. 413.

■ Sostienen además los demandados, que en todo caso las demandantes Josefa y Modesta González ratificaron todo lo actuado al comparecer ante el Departamento de Hacienda a solicitar la parte que les correspondía del producto de la venta en pública subasta recibiendo el cheque correspondiente y que otro tanto hicieron los demandantes Baldomero y Saturnina Vera González, herederos de Isidra González.

La prueba en cuanto a este particular fué al efecto de que el 13 de diciembre de 1935, María Modesta y María Josefa González y Baldomero y Saturnina Vera González (es-

(1)Los artículos 1267 y 1268 referidos son los artículos 1252 y 1253 del Código Civil (ed. 1930), que disponen en lo pertinente, que los contratos en que concurran los requisitos que expresa el artículo 1213 pueden ser anulados y que la acción de nulidad sólo durará cuatro años.

tos dos últimos son herederos de María Isidra González) firmaron un documento que dice así:

"Nosotros, los abajo suscribientes deseamos hacer constar que somos los herederos de Tomás Aquino González, que a virtud de la subasta en ejecución de una finca de la Sucesión hubo un sobrante de CIENTO NOVENTA Y CINCO DÓLARES CINCUENTA Y TRES CENTAVOS, que nos pertenecen en este momento está en depósito en la Tesorería de Puerto Rico.

"Que no hemos entregado este caso a ningún otro abogado para ser diligenciado y sí deseamos y lo entregamos al Lic. Luis Pérez Matos, de Utuado, para que gestione el cobro o saque de este dinero."

En 28 de enero de 1936, el Lic. L. Pérez Matos firmó un recibo que dice así:

"He recibido del Jefe de la Sección de Embargos de San. Juan, P. R., en mi carácter de Representante de la Sucn. Tomás Aquino González, la suma de ciento noventa y cinco dólares con 51/100 ($195.51) que representa el sobrante habido en, a favor de dicha Sucesión, el remate de los siguientes bienes después de cobradas las contribuciones, sobre la propiedad por el año económico 1921–22, recargos y costas adeudados, montantes a $102.18.

"Finca de 151.37 cuerdas conteniendo 3 casas de madera y paja en los Bos. Los Angeles y Caguana del mpio. de Utuado, los cuales bienes fueron subastados en esta Colecturía, el día 5 de dic. de 1922."

El Lic. Pérez Matos declaró en el juicio de este caso y dijo que había sido comisionado por Baldomero Vera González para hacer las gestiones de cobro del mencionado remanente; que cobró el dinero, le pagaron sus honorarios y se repartieron el resto; que todos estuvieron en su bufete porque tenían que endosar el cheque para poder cobrarlo. Baldomero Vera González declaró que firmó el documento que le dió el Lic. Pérez Matos y se lo llevó para que lo firmaran sus tías María Josefa y María Modesta y su hermana Saturnina, lo que hicieron y luego recibió de dicho letrado un dinero que se repartió entre todos ellos; que no sabía de qué era ese dinero. Las demandantes mencionadas declararon al mismo efecto, que firmaron el documento y re-

cibieron el dinero pero que no sabían de dónde procedía pero creían que era de la herencia de Tomás Aquino González.

No tenemos duda de que el Lic. Pérez Matos actuó en representación de los demandantes que firmaron el documento autorizándolo a gestionar el cobro del remanente de la subasta, que lo cobró y se repartió entre ellos. ¿Qué efecto legal tuvo esta actuación?

La regla general la expone Cooley en esta forma:

"Una persona puede ser impedida (*estopped*) de atacar la validez de una venta por contribuciones o la escritura de venta, como por ejemplo si acepta, *teniendo conocimiento de todos los hechos*, el exceso recibido en la venta sobre las contribuciones y gastos." 4 Ob. Cit. 2961, sec. 1507. (Bastardillas nuestras.)

Los demandantes no pueden sostener que no tenían conocimiento de todos los hechos que ahora alegan para atacar la validez de la venta. Sabían que no habían sido notificados del embargo de las fincas, que es el hecho esencial del caso, aun cuando vinieron a enterarse de lo que ellos alegan constituyó las actuaciones fraudulentas de Ramón Díaz Román, años después de fallecido éste. Además, en el documento que suscribieron, expresamente admiten saber que se efectúo la subasta y que hubo un sobrante de $195.51 que les pertenecía como herederos de Tomás Aquino González. Y además admitieron haber recibido dicho remanente, aunque sostuvieron que desconocían su procedencia. La corte inferior no dió crédito al testimonio de los demandantes sobre esto último y sí a la declaración del abogado que intervino, diciendo al efecto en su opinión:

". . . El Lic. Pérez Matos que es un abogado de buen crédito, declaró que cuando recibió ese dinero todos los demandantes o sus causantes fueron a su oficina y que allí se hizo una distribución y se les explicó a todos sobre el remanente de la subasta."

No estamos convencidos de que la corte cometiera manifiesto error al apreciar la prueba sobre este particular y por

tanto, debemos aceptar su conclusión de que los demandantes al firmar el documento y al aceptar el remanente de la subasta lo hicieron con conocimiento de causa y que no pueden alegar con éxito que no están impedidos de atacar la validez de la venta. *Cf. Sucn. Igaravídez et al.* v. *Rubert Hnos. et al.*, 23 D.P.R. 293.

En el caso de *Proctor* v. *Nance,* 119 S. W. 409 (Mo. 1909), se resolvió que aun cuando el procedimiento para la venta de tierras por falta de pago de contribuciones fuera insuficiente para conferir título, el dueño, al aceptar el remanente sobre las contribuciones adeudas y las costas, ratifica la venta, y él y sus causahabientes están impedidos de cuestionar la validez de la venta, aun cuando el dueño no sabía cuando aceptó el remanente, que la venta era nula. En dicho caso, como en éste, se alegó que el dueño era una persona sin educación y que no tuvo la intención de ratificar la venta al aceptar el remanente y hasta se trató de consignar en corte dicho remanente. Al mismo efecto véanse *Milan Bank* v. *Richmond,* 217 S. W. 74 (Mo., 1919); *Walker* v. *Hassler,* 240 S. W. 257 (Mo., 1922); *Hector* v. *Mann,* 124 S. W. 1109 (Mo., 1910).

No estamos resolviendo que la actuación de aquellos demandantes que aceptaron el remanente equivalga a una confirmación de la venta, pues de acuerdo con el artículo 1262 del Código Civil sólo son confirmables los contratos que reúnan las condiciones expresadas en el artículo 1213, y ya hemos resuelto que la venta fué nula por carecer de consentimiento. Unicamente resolvemos que dichos demandantes, como consecuencia de dicha actuación están impedidos de atacar la validez de la venta.

Ahora bien, aun cuando el Lic. Pérez Matos hizo la reclamación del remanente a nombre de la Sucn. Tomás Aquino González y firmó el recibo a nombre de dicha sucesión se probó que María Josefa y María Modesta González y Baldomero y Saturnina Vera González fueron los únicos

miembros de la sucesión que se beneficiaron de dicho remanente sin que aparezca que estuvieran autorizados para actuar en la forma en que lo hicieron a nombre de los demás componentes de la sucesión.

Tenemos, por tanto, que en cuanto a los condominios originalmente pertenecientes a María Magdalena, María Modesta, María Gil y Carlino por haberlos ellos vendido en el año 1920, antes del embargo y de la subasta, los demandantes nada pueden reclamar. Tampoco en cuanto al condominio originalmente perteneciente a María Isidra (Baleriana), pues ella fué notificada legalmente del embargo y al condominio de María Josefa, por haber ella aceptado su participación en el remanente de la venta. Quedan los dos condominios que originalmente pertenecían a María Felipa y a María Ramona, los que, por haber ellas fallecido, pasaron a sus herederos, en cuanto a la primera, los demandantes Angel, América, Camelia y Josefa Ramos González, y en cuanto a la segunda, por no haber dejado descendientes ni ascendientes, dicho condominio vino a ser propiedad de sus hermanos María Gil, María Josefa, María Modesta, María Magdalena y Carlino y de los hijos de María Isidra y María Felipa. Pero es que Carlino también falleció sin dejar descendientes ni ascendientes, por lo que su participación en el condominio que adquirió de su hermana María Ramona pasó de nuevo a ser propiedad de sus hermanas María Gil, María Josefa y María Modesta y de los hijos de María Isidra, María Felipa y María Magdalena, que se especifican en la demanda, al igual que de los hijos de Tomás Vera (hijo de María Isidra), que también falleció. Pero de los hijos de María Isidra, Baldomero y Saturnina aceptaron parte del remanente de la venta y también lo aceptó María Modesta. De manera que tampoco estos tres últimos tienen en la actualidad derecho a reclamar.

Sostienen los demandados que ellos y sus causantes han poseído las fincas reclamadas con justo título

y buena fe, en concepto de dueños, pública, pacífica y continuamente, entre presentes, por un período de más de diez años. Es decir, alegan como defensa, la prescripción adquisitiva que provee el artículo 1857 del Código Civil. Aceptando que el título que adquirió el causante de los demandados pueda conceptuarse de justo,([2]) él no fué un poseedor con buena fe pues se reputa como tal " ... al que ignora que en su título o modo de adquirir exista vicio que lo invalide", artículo 363 del Código Civil (ed. 1930), o consiste, de acuerdo con el artículo 1850 del mismo cuerpo legal, " ... en la creencia de que la persona de quien recibió la cosa era dueño de ella, y podía transmitir su dominio", y a Díaz Román le constaba que en las fincas subastadas él tenía tres condominios que había comprado a María Modesta, María Magdalena y Carlino y que él no había sido notificado del embargo y permitió que se subastara la totalidad de las fincas por Sureda, estando él presente en la subasta pues fué un postor. Siendo él un condueño que no fué notificado, es de presumirse que se enteró de la subasta por la forma en que se anunció en los edictos publicados en los cuales no podía aparecer más que la notificación de embargo hecha a Baleriana González. Tuvo conocimiento, por tanto, del vicio que invalidaba el modo de adquirir y el título de Sureda y de Reboyras.

Aun cuando la corte inferior resolvió que la prueba presentada no fué suficiente para dejar establecido el hecho de que la transacción habida en relación con la compra y venta de las fincas entre Sureda, Reboyras y Díaz Román fueron fraudulentas, no hay duda de que a Díaz Román le constaba y sabía que las fincas pertenecían en cinco octavas partes a los demandantes o a sus causantes y que en el certificado

([2])Los artículos 1852, 1853 y 1854 del Código Civil (Ed. 1930) disponen:

"Artículo 1852: —Entiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate.

"Artículo 1853:— El título para la prescripción ha de ser verdadero y válido.

"Artículo 1854:— El justo título debe probarse; no se presume nunca."

de venta expedido por el Colector a Sureda e inscrito en el Registro de la Propiedad, sólo se hacía constar:

"Que según lo dispone el artículo 315 del Código Político de Puerto Rico he notificado *de esta venta* a todos y cada uno de los miembros de la Sucesión de Tomás Aquino González. . ." (Bastardillas nuestras.)

Nada se dice en dicho certificado de que los miembros de la sucesión habían sido notificados del embargo, que es lo que requiere la ley, ya que el artículo 315 lo que provee es que la venta de los bienes será notificada a las personas que tuvieren una hipoteca o gravamen sobre dicha propiedad, y hemos resuelto en el caso de *Nieves* v. *Registrador,* supra, que la notificación de la venta a los dueños no subsana la omisión de haberles notificado del embargo. Y esto es así, porque el propio artículo 315 dispone que:

". . . Cada notificación de embargo por contribuciones atrasadas, sea sobre bienes inmuebles o sobre bienes muebles, producirá el mismo efecto que un fallo judicial contra toda la propiedad embargada del contribuyente moroso. . ."

Tenemos además, que en la anotación de embargo que se hizo en el registro a petición del Colector de Rentas Internas, las fincas fueron embargadas como de la propiedad de la Sucn. de Tomás Aquino González, cuando para dicha fecha el registrador había informado al Colector que las fincas aparecían inscritas a nombre de Tomás Aquino González. Díaz Román, que en el año 1920 ya había adquirido tres condominios en las fincas, pagando $2,000 por los dos que compró a María Modesta y a María Magdalena y valorándose el de Carlino en $1175 en una permuta, o sea un valor total de $3,175, no inscribió en el registro dichos condominios a su nombre hasta enero de 1923, más de un año después de haberse celebrado la subasta, a la cual había comparecido, pero un mes antes de que Sureda inscribiera el certificado de venta que le expidió el Colector. Díaz Román, por tanto, permitió que se vendieran en pública su-

basta por contribuciones atrasadas montantes a $102 unas fincas valoradas a los efectos de la contribución en $7,000 y en las cuales él había adquirido tres condominios por $3,175 por la suma de $415 ofrecida por Sureda, quien mejoró en $15 la postura de $400 hecha por el propio Díaz Román. Un año después, Sureda vende los condominios en las fincas a un medio hermano de Díaz Román por $580 y cuatro años después aparece Díaz Román comprándole esos condominios a su hermano por $2,000. Bajo todas estas circunstancias, aun cuando no intervengamos con la conclusión de la corte inferior en cuanto al fraude, no podemos convenir con ella en cuanto a que Díaz Román fué un poseedor de buena fe. Tampoco, bajo las circunstancias antes expuestas, puede conceptuarse a Díaz Román como un tercero protegido por el artículo 34 de la Ley Hipotecaria.

Erró la corte al desestimar la primera causa de acción de la demanda. En cuanto a la segunda sobre frutos, la prueba de los demandantes fué demasiado indeterminada y vaga para poder basar un fallo justo en ella.

*Debe revocarse la sentencia y dictarse otra declarando con lugar la primera causa de acción y en su consecuencia, nula la venta en pública subasta de las fincas descritas en la demanda, en tanto en cuanto a los condominios de dos octavas partes que pertenecían originalmente a María Felipa y María Ramona González y nulas las ventas que de dichos condominios hizo Alberto Sureda a Ramón Reboyras y éste a Ramón Díaz Román, debiendo los demandados otorgar escritura por la cual reconozcan sus respectivas participaciones a aquellos demandantes que, de acuerdo con los términos de esta opinión, tengan derecho a ellos, y se declara sin lugar la segunda causa de acción, con costas, sin incluir honorarios de abogado.*

El Juez Asociado Sr. Negrón Fernández no intervino.